CITY OF DALLAS, Petitioner,

v.

VSC, LLC, Respondent.

No. 08–0265.

Supreme Court of Texas.

Argued Jan. 8, 2010.

Decided July 1, 2011.

Rehearing Denied Sept. 30, 2011.

Charles Steven Estee, Office of the Dallas City Attorney, Barbara E. Rosenberg, Shereen Ali El Domeiri, Assistant City Attorneys, Thomas P. Perkins, Jr., Dallas City Attorney and James B. Pinson, Assistant City Attorney, Dallas TX, for City of Dallas.

James C. Mosser, Mosser PLLC Lawyers, Byron Kevin Henry, Cowles & Thomson, P.C., Alexis Katz Caughey, Mosser PLLC and Alexis F. Steinberg, Moser Law PLLC, Dallas TX, for VSC, LLC.

James C. Ho, Gibson Dunn & Crutcher LLP, Dallas TX, Bill Davis, Office of the Attorney General of Texas, Office of Solicitor General, Austin TX, for amicus curiae Office of the Solicitor General of Texas.

Chief Justice JEFFERSON delivered the opinion of the Court, joined by Justice HECHT, Justice MEDINA, Justice GREEN, Justice WILLETT, and Justice LEHRMANN.

We expect our government to retrieve stolen property and return it to the rightful owner. What happens, though, when a person claims an interest in property the government has seized? In this case, the City of Dallas seized vehicles, which it alleged were stolen, from a company that was entitled to petition for their return. *See* TEX.CODE CRIM. PROC. art. 47.01 a(a). Instead of pursuing its statutory remedy, the company sued, alleging that its interest in those vehicles had been taken without just compensation. We hold that the availability of the statutory remedy precludes a takings claim. We reverse the court of appeals' judgment and render judgment dismissing this suit.

## I. Background

Beginning in the summer of 2002 and continuing through 2004, the City's police

department seized a number of vehicles from VSC, a licensed vehicle storage facility.[1] VSC initially alleged that the City seized 326 vehicles.[2] City police officers testified that all of the seized vehicles had been reported stolen or otherwise displayed indicia of theft, such as altered vehicle identification numbers. VSC's records confirmed that many of these vehicles had been reported stolen.

■ Several days after the initial seizure, VSC sued the City, asserting a lien for fees related to the vehicles' storage and contending that the City's actions amounted to an unconstitutional taking. The City removed the suit to federal court, which took jurisdiction over all but the takings claim,[3] which it remanded to state court along with the related declaratory judgment action.[4] The City filed a plea to the trial court's jurisdiction on several grounds, which that court denied. The court of appeals affirmed with respect to all but one issue.[5] 242 S.W.3d 584, 599. We granted the petition for review. 53 Tex. Sup.Ct. J. 13, 15 (Oct. 23, 2009).[6]

## II. VSC's Takings Claim

### A. The Statutory Remedy

Texas law permits a police officer to seize, without a warrant, vehicles that reasonably appear to have been stolen. TEX. TRANSP. CODE § 501.158(a) (permitting the warrantless seizure of allegedly stolen vehicles if an officer has probable cause). Vehicles seized under that authority are treated as stolen for purposes of custody and disposition. *Id.* § 501.158(b). But it may turn out that the property was not stolen at all, that it has multiple owners, or that it is subject to other claims, like a lien or leasehold interest. For these and other reasons, the Legislature enacted chapter 47 of the Code of Criminal Procedure, which protects a person's claimed interest in seized property. When there is a dispute as to property ownership, an officer possessing allegedly stolen property must secure it until the court directs its disposition. TEX.CODE CRIM. PROC. art. 47.01(a). That officer must file with the court a schedule of the property and its value and must "notify the court of the names and

---

1. *See* TEX. OCC.CODE ch. 2303. A vehicle storage facility is a parking facility that is used to store or park at least ten vehicles each year. *Id.* § 2303.002(8)(B). The chapter does not regulate vehicles parked with the consent of the owner. *Id.* § 2303.003(a). VSC's license to operate as a vehicle storage facility was revoked sometime after the occurrence of the facts that form the basis of this case.

2. The precise total is disputed, with the City claiming that 324 vehicles were seized. In any event, VSC ultimately abandoned its claims to 47 of the seized vehicles and another 25 or 27 were either not seized or were the result of duplications or inaccuracies in VSC's records.

3. VSC alleges a taking under both the Texas and United States Constitutions. Where the parties have not argued that there are any material differences between the state and federal versions of a constitutional provision,

we typically treat the two clauses as congruent. *See New Times, Inc. v. Isaacks,* 146 S.W.3d 144, 150 (Tex.2004).

4. *See VSC, LLC v. City of Dallas,* No. 3:04–CV–1046–D (N.D.Tex. Feb. 23, 2005) (order remanding some claims to state court and retaining jurisdiction over others). The federal court retained jurisdiction over VSC's constitutional claims alleging an unlawful search and seizure, as well as its pendent state-law tort claims. *See id.*

5. The court of appeals held that the trial court abused its discretion in denying the plea with respect to VSC's claim that the City took, damaged, or destroyed VSC's property for a private purpose. 242 S.W.3d 584, 596. VSC does not challenge that ruling here.

6. We called for the views of the Solicitor General, who submitted a brief on behalf of the State of Texas as amicus curiae.

addresses of each party known to the officer who has a claim to possession of the seized property." *Id.* art. 47.03.

Because the officer may not know the identity of all persons with a claim to possession, the statute provides that any person with a property interest may assert that interest directly with the court.[7] *Id.* art. 47.01 a(a) ("[U]pon the petition of an interested person" a judge "may hold a hearing to determine the right to possession of the property."). During that hearing "any interested person" may present evidence establishing ownership. *Id.* art. 47.01 a(c). The individual proving the superior right to the property is entitled to its return, subject to the State's use of it in prosecuting related crimes.[8] *Id.* arts. 47.01a(a)(1)–(a)(2), 47.04. Occasionally— perhaps frequently—the property is never claimed and the government either sells or destroys it. *Id.* arts. 18.17, 47.06. If the property is sold, its true owner may recover the proceeds. *Id.* arts. 18.17(e), 47.07.[9]

Here, forty-seven of the seized vehicles were the subject of chapter 47 proceedings initiated by the City and adjudicated in municipal court. The court awarded some of the cars to VSC, some to the cars'

owners, and others to the owners on the condition that VSC's fees were first satisfied. Thus, in many cases, VSC regained possession of the vehicles that the City had seized, and in others it was awarded compensation. VSC concedes that this procedure, when properly used, adequately protects its interests. As such, VSC has not brought takings claims with respect to the vehicles for which municipal court hearings were held.

 For the other 270 vehicles, VSC claims that it does not know how the City disposed of them—or if it did. Though VSC could have initiated chapter 47 proceedings to assert its interest in the vehicles, it argues here that if the City wished to dispose of the vehicles, it was required to give VSC notice prior to hearings on their disposition. Any failure to do so, VSC argues, amounts to an unconstitutional taking of its asserted lien interest.[10] We disagree and hold that because VSC had actual knowledge of the vehicles' seizure—VSC knew the cars were seized from its lot, and it knew who seized them—it was required to pursue the chapter 47 proceedings.[11] We hold further that

---

7. Though chapter 47 proceedings are typically brought in municipal court, that venue is not exclusive. *See* Tex.Code Crim. Proc. § 47.01(d). Claims under chapter 47 may be brought in the same suit as other claims.

8. A chapter 47 proceeding initiated in municipal or justice court may be appealed to a county court or statutory county court, where they are "governed by the applicable rules of procedure for appeals for civil cases in justice courts to a county court or statutory county court." Tex.Code.Crim. Proc. 47.12(b). Matters appealed to county court are tried de novo. Tex.R. Civ. P. 574b.

9. The owner of property sold pursuant to chapter 47 may recover the proceeds of the sale under the same circumstances as may the owner of property sold under the abandoned and unclaimed property statute. Tex.Code

Crim. Proc. art. 47.07. Thus, the real owner must file a claim for the proceeds "not later than the 30th day after the date of [the property's] disposition." *Id.* art. 18.17(e).

10. We assume without deciding that a licensed vehicle storage facility may have a garageman's lien in a stored vehicle and that a garageman's lien may exist in stolen property. *See* Tex. Prop.Code § 70.003(c) (providing for a lien in vehicles "left for care" with a garageman). The City disputes both of these contentions.

11. The dissent provides a number of quotations from VSC's pleadings to argue that VSC did ask for chapter 47 relief in the trial court. While VSC asked to be declared an interested party entitled to notice under chapter 47, it pointedly *did not* seek a hearing. To the contrary, VSC disclaimed any responsibility

VSC must have utilized those procedures before a takings suit can be viable.

 The constitution waives immunity for suits brought under the Takings Clause,[12] but this does not mean that a constitutional suit may be brought in every instance. The Legislature's broad authority to prescribe compensatory remedies for takings is well-established, so long as those methods comply with due process and other constitutional requirements. *See, e.g., Secombe v. R.R. Co.*, 90 U.S. 108, 117–18, 23 Wall. 108, 23 L.Ed. 67 (1874) (holding that the Legislature has broad authority to create eminent domain procedures). When the Legislature creates such a statutory procedure, recourse may be had to a constitutional suit only where the procedure proves inadequate, for it is not the taking of property, as such, that raises constitutional concerns, but the taking of property *without just compensation. See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) ("The [Takings Clause] does not proscribe the taking of property; it proscribes taking without just compensation.").[13] When there exists provision for compensation—or, as here, for the property's return—a constitutional claim is necessarily premature. *See id.* at 194–95, 105 S.Ct. 3108 ("If the government has provided an adequate

to file under chapter 47 and argued, as it continues to argue here, that it was the City's sole responsibility to seek such hearings. Likewise, VSC's response to the City's plea to the jurisdiction focused solely on its takings claim—the only claim asserted in its live pleading. This does not amount to a request for chapter 47 relief. VSC was required to protect its alleged property interest by seeking relief under chapter 47. The statute authorized VSC to seek such relief, and the reasons for its failure to do so are irrelevant. *Cf.* 347 S.W.3d at 247 (suggesting that VSC failed to request a hearing because it "did not believe that it could bring a claim under Chapter 47").

**12.** *See Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex.1980) ("The Constitution itself is the authorization for compensation for the destruction of property and is a waiver of governmental immunity for the taking, damaging or destruction of property for public use.").

**13.** The dissent contends that *Williamson County*'s state-court litigation requirement does not apply here because that decision was based on federalism concerns not present in this case. 347 S.W.3d at 245. We believe, though, that the Court's reasoning has direct relevance. *Williamson County* requires complainants alleging a taking to file inverse condemnation suits in state court before bringing suit in federal court. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S.

172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). The Court began with the basic proposition that the Takings Clause only prohibits takings without just compensation. *Id.* at 194, 105 S.Ct. 3108. Citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), the Court explained that it had already interpreted this to mean that "taking claims against the Federal Government are premature until the property owner has availed itself of" remedial statutory procedures. *Williamson Cnty.*, 473 U.S. at 195, 105 S.Ct. 3108. The Court further held that a state-court inverse condemnation claim *was* a *Ruckelshaus*-type remedial procedure, and that a property owner therefore could not bring a *federal* takings claim until he had proceeded in state court. *Id.* at 195–96, 105 S.Ct. 3108. This second holding has been criticized, as it has made it more difficult for property owners to bring takings claims against state governments in federal courts. *See San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 348, 125 S.Ct. 2491, 162 L.Ed.2d 315 (2005) (Rehnquist, C.J., concurring) (arguing that *Williamson County*'s state-court litigation rule should be reconsidered).

Our holding today, however, relies only on *Williamson County*'s primary observation that utilization of a remedial scheme for recovery of property logically precedes a takings claim. As the Court acknowledged, this is a proposition implicit in the Takings Clause and well-supported by precedent.

process for obtaining compensation, and if resort to that process '[yields] just compensation,' then the property owner 'has no claim against the Government' for a taking." (quoting *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1013, 1018 n. 21, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)) (alteration in original)); *see also Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21, 60 S.Ct. 413, 84 L.Ed. 554 (1940) (refusing to pass upon a takings claim because of the existence of a statute "afford[ing] a plain and adequate remedy"); *Hurley v. Kincaid*, 285 U.S. 95, 104, 52 S.Ct. 267, 76 L.Ed. 637 (1932) (holding that governmental action was not unconstitutional because "the complainant can recover just compensation under the Tucker Act in an action at law ... [and t]he compensation which he may obtain in such a proceeding will be the same as that which he" is entitled to under the constitution); *Crozier v. Fried. Krupp Aktiengesellschaft*, 224 U.S. 290, 306–07, 32 S.Ct. 488, 56 L.Ed. 771 (1912) (rejecting a constitutional challenge on the basis of the Takings Clause because the relevant statute provided a compensatory mechanism).[14]

Immediately following the vehicles' seizure, however, when VSC filed its district court lawsuit, VSC had a legal avenue through which it could potentially regain possession or compensation. As the dissent acknowledges, operation of the chapter 47 procedure might have "moot[ed] VSC's takings claim." 347 S.W.3d at 249. This is significant, because if a remedial procedure might have obviated the need

for a takings suit, then the property simply had not, prior to the procedure's use, been taken *without just compensation.* Because VSC could seek possession or compensation through a remedial statutory scheme, it could not ignore that scheme in favor of initiating a constitutional takings suit.

*Hays v. Port of Seattle*, 251 U.S. 233, 40 S.Ct. 125, 64 L.Ed. 243 (1920), is a good illustration of this rule. There, the Supreme Court refused to permit a claimant to bring a takings suit, despite the fact that the government had seized his property for a public purpose. *Hays*, 251 U.S. at 238, 40 S.Ct. 125. The Court emphasized that the state provided a procedure by which the claimant could seek just compensation. *Id.* ("[T]his statute constitutes an adequate provision for assured payment of any compensation due to complainant....."). Thus, the Supreme Court held that there could be no taking because the claimant bypassed the compensatory procedure.

As in *Hays*, the claimant here alleges that a taking has occurred. As in *Hays*, the Legislature has provided a procedure capable of "constitut[ing] an adequate provision," *id.*, for compensation—here, actual possession. And, as in *Hays*, the claimant here has ignored the compensatory scheme in favor of a constitutional claim. Thus, we reject VSC's taking claim because it did not pursue an established remedy to recover its claimed interest in the seized property.[15]

---

**14.** The Supreme Court later explained that the existence of a statutory remedy in *Crozier* made the government's taking of property in that case constitutionally unobjectionable. *See William Cramp & Sons Ship & Engine Bldg. Co. v. Int'l Curtis Marine Turbine Co.*, 246 U.S. 28, 44–45, 38 S.Ct. 271, 62 L.Ed. 560 (1918) ("[T]he provisions of the statute affording a right of action and compensation

were adequate to justify the exercise" of the government's power.).

**15.** *See also Ruckelshaus*, 467 U.S. at 1013 n. 16, 104 S.Ct. 2862 (holding that a statutory procedure that provides just compensation "nullif[ies] any claim against the Government for a taking"). In *Ruckelshaus*, Monsanto claimed that the Environmental Protection Agency (EPA) had taken without just compen-

## B. Notice

VSC suggests, however, that chapter 47 is constitutionally infirm because it does not require that the City notify claimed owners of these proceedings. Disputes about proper notice invoke procedural due process, not the Takings Clause. In *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005), the Supreme Court observed that takings and due process are distinct inquiries and held that due process claims must be addressed first because whether there has been proper notice is a question "logically prior to and distinct from" whether there has been a taking. The Takings Clause guarantees compensation "in the event of *otherwise proper interference* amounting to a taking." *Id.* (internal quotations omitted). If due process is violated due to failure of notice, however, "that is the end of the inquiry" because "[n]o amount of compensation can authorize such action." *Id.* Thus, VSC's failure-of-notice claim is more properly considered as alleging a due process violation than a taking. Regardless, we believe that VSC's actual notice of the vehicles' seizures was constitutionally sufficient and that it therefore had the burden of pursuing the chapter 47 remedy.

In *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court concluded that due process is satisfied if notice is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. 652. The *Mullane* Court focused on the requirement that the parties be actually notified of an action that might affect their interests. *Id.* at 315, 70 S.Ct. 652 ("The chance of actual notice is further reduced when, as here, the notice required does not even name those whose attention it is supposed to attract...."). The Supreme Court recognized "the impossibility of setting up a rigid formula as to the kind of notice that must be given," holding that the "notice required will vary with circumstances and conditions." *Walker v. City of Hutchinson*, 352 U.S. 112, 115, 77 S.Ct. 200, 1 L.Ed.2d 178 (1956).

In *City of West Covina v. Perkins*, 525 U.S. 234, 241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999), the Supreme Court held that actual notice is constitutionally sufficient notice of a remedial procedure when that procedure is easily discoverable. There, the police seized personal property from Perkins's home under a valid search warrant. *West Covina*, 525 U.S. at 236, 119 S.Ct. 678. The police did not suspect Perkins of a crime but, rather, were pursuing a former boarder who was purportedly involved in a homicide. *Id.* As required by statute, the police left Perkins a warrant that listed the seized property and named the issuing magistrate and executing officer. *Id.* at 236–37, 119 S.Ct. 678. Rather than seek a court order, Perkins sued the

sation certain trade secrets that it was required to submit during the approval process for insecticides under the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA). *Id.* at 998, 104 S.Ct. 2862. The alleged taking occurred when the EPA used some of Monsanto's trade secrets in assessing the permit applications of other companies' insecticides. *Id.* However, under FIFRA, Monsanto was entitled to compensation from the companies to whose benefit its trade secrets were ap-

plied, which it could seek through a statutory arbitration process. *Id.* at 995, 104 S.Ct. 2862. The Court held that Monsanto's takings claims were unripe because it had not yet arbitrated its claims, noting that "[i]f a negotiation or arbitration pursuant to [FIFRA] were to yield just compensation ..., then Monsanto would have no claim against the Government for a taking." *Id.* at 1013., 104 S.Ct. 2862

officers and alleged that the remedies for the property's return did not satisfy due process. *Id.* at 237–38, 119 S.Ct. 678. The Supreme Court distinguished *Mullane,* writing that while individualized notice of the seizure itself is necessary,

> [n]o similar rationale justifies requiring individualized notice of state-law remedies which, like those at issue here, are established by published, generally available state statutes and case law. Once the property owner is informed that his property has been seized, he can turn to these public sources to learn about the remedial procedures available to him. The City need not take other steps to inform him of his options.

*Id.* at 241, 119 S.Ct. 678. The notice contained in the search warrant was sufficient process and Perkins was then required to initiate proceedings for the property's return. *Id.* at 242–44, 119 S.Ct. 678.

16. Even if it failed to participate in the chapter 47 proceedings, VSC might have had, in certain cases, a second post-deprivation option available to it. *See* TEX.CODE CRIM. PROC. arts. 18.17(e), 47.07.

17. VSC, having notice of the vehicles' seizure, should have initiated chapter 47 proceedings, both to notify the government that it was asserting an interest in the vehicles and to determine its interest in them. VSC failed to do so. After *West Covina,* federal courts have held that where a claimant fails to take advantage of a State's post-deprivation procedures, that claimant cannot then complain of the State's subsequent disposition of the property. *See, e.g., Revell v. Port Auth. of N.Y. & N.J.,* 598 F.3d 128, 139 (3rd Cir.2010) (affirming summary judgment against the claimant because "he did not take advantage of state procedures available to him for the return of his property"); *Mora v. City of Gaithersburg,* 519 F.3d 216, 230 (4th Cir.2008) ("Mora has had, and continues to have, notice and an opportunity to be heard in Maryland, and he cannot plausibly claim that Maryland's procedures are unfair when he has not tried to

The facts in this case mirror those in *West Covina.* The police legally seized VSC's property, and VSC was aware of what property was seized and by whom. The Legislature provided a statutory remedy for the return of the property that was easily discoverable from public sources. *See* TEX.CODE CRIM. P. ch. 47.[16] Having given constitutionally sufficient notice of the seizures, the City was under no obligation to invite VSC to initiate chapter 47 proceedings.[17]

### III. Declaratory Judgments

 The City filed a plea to the trial court's jurisdiction as to several declarations requested by VSC.[18] The trial court denied the plea, and the court of appeals affirmed despite the fact that VSC had by then lost its license to operate a vehicle storage facility and therefore could no longer store the type of vehicles involved in this suit. The court of appeals noted that VSC's requested declarations were

avail himself of them."); *McKinney v. Chidley,* 87 Fed.Appx. 615, 617 (9th Cir.2003) (memo. op.) (affirming summary judgment against claimant because he admitted that he did not follow State procedures for recovering property).

We also note that the dissent's position on notice could severely hamper law enforcement. We assume for the purposes of this case that VSC does in fact have a property interest in its alleged liens on the seized vehicles, although the State strenuously disputes this proposition. But in a case like this, where the precise contours of property rights are unclear, it is difficult to charge the government with the duty of notice. The dissent's rule would subject political subdivisions to takings liability in cases in which they did not even know property rights existed. Because VSC's actual notice was sufficient here, however, we need not reach this issue.

18. VSC sought declarations that (1) it was entitled to fees for stolen vehicles, (2) the City lacked authority to seize allegedly stolen vehicles from VSC, and (3) VSC was entitled to notice and a hearing under chapter 47.

not by their terms limited to nonconsensually-towed vehicles, and on this basis it refused to grant the plea. 242 S.W.3d at 597. This, however, conflicts with our rule that a declaratory judgment action may lie only where there is a "substantial controversy involving genuine conflict of tangible interests."[19] *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995) (internal quotations omitted). But with regard to the sort of vehicles VSC may still store, there is no apparent conflict at all, and as such the relief sought is highly speculative and theoretical, incapable of settling any actual controversy between the parties. *See id.; State ex rel. McKie v. Bullock*, 491 S.W.2d 659, 660 (Tex.1973) (holding that there could be no declaratory judgment action where a declaration would not settle an actual controversy between the parties).

## IV. Conclusion

VSC received all of the process to which it was entitled. A party cannot claim a lack of just compensation based on its own failure to invoke a law designed to adjudicate such a claim. We reverse the court of appeals' judgment and render judgment dismissing the case. Tex.R.App. P. 60.2(c).

Justice WAINWRIGHT delivered a dissenting opinion, joined by Justice JOHNSON and Justice GUZMAN.

Justice WAINWRIGHT, joined by Justice JOHNSON and Justice GUZMAN, dissenting.

A peace officer may take possession without a warrant of property in the hands of innocent third parties if he or she has probable cause to believe it may have been stolen. *See* Tex. Transp. Code § 501.158(a) ("A peace officer may seize a vehicle or part of a vehicle without a warrant if the officer has probable cause to believe that the vehicle or part: (1) is stolen; or (2) has had the serial number removed, altered, or obliterated."). The government holds such property, at times at private storage facilities, until its usefulness, if any, as evidence in a judicial proceeding is over and the actual owner is determined. Under such circumstances, we expect our government to preserve and protect individuals' property and dispose of it only when allowed by law and with notice to the property's owners. In this case, a third party with a protectable interest in property that was seized sought, among other things, injunctive relief in state district court to prohibit the government from disposing of that interest and declaratory relief seeking recognition of its rights in the property. During the pendency of the lawsuit, the government not only physically removed more of the property, but also disposed of the property subject to the original suit without notice or compensation to the third party. The third party had a storage lien on confiscated vehicles to secure its right to be paid for the storage services it provided.

The Court holds that because the third party failed to pursue remedies through a vague, incomplete, and likely constitutionally infirm statutory procedure, its recovery is precluded in the original suit filed in district court requesting the same relief the Court says it must seek as a prerequisite to a takings claim. The Court, on an issue not raised by the parties, dismisses VSC's claims for its failure to specifically

---

19. We have conflicts jurisdiction over this case based on section 22.225(c) of the Government Code as it existed at the time this action was filed, which grants us jurisdiction where the court of appeals' decision would overrule a decision of this Court if both had been decided by the same court. *Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 867 (Tex.2001); *see also* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 1.02, 2003 Tex. Gen. Laws 847, 848 (codified at Tex. Gov't Code § 22.225).

plead a claim (1) usually initiated in municipal court that is not a required prerequisite, (2) that the City argued at the trial court and the court of appeals was unavailable for VSC to seek during the pendency of a lawsuit, covering the same conduct, and (3) where VSC sought equivalent relief through injunctions and declaratory judgment actions. I would hold that VSC sought the relief under Chapter 47 of the Code of Criminal Procedure that the Court holds is a prerequisite to an inverse condemnation claim. VSC satisfied that prerequisite with its pleadings. And on the merits, I would hold that there are fact questions as to whether and how the City disposed of the vehicles at issue and affirm the trial court's denial of the plea to the jurisdiction. I therefore respectfully dissent.

## I. Factual and Procedural Background

The Court's brief recitation of the facts omits important information regarding the substance and timing of VSC's claims and the government's actions regarding VSC's property. In 2002, VSC operated a Vehicle Storage Facility licensed in accordance with the Vehicle Storage Facility Act (VSFA), which authorized VSC to receive and store vehicles towed to its lot without the owners' consent. TEX. OCC.CODE §§ 2303.001–.305. In 2002 the Dallas Police Department (DPD), directed by the City of Dallas (City), entered VSC's property and took possession of fifty vehicles from VSC's storage lot. VSC stored the vehicles towed there. Four days after the first fifty vehicles were seized, VSC sought a temporary restraining order in state district court against the City, presumably to prevent seizures of any more vehicles.

Eventually, the City filed proceedings under Chapter 47 of the Texas Code of Criminal Procedure to determine possession of the allegedly stolen vehicles. See TEX. CODE CRIM. PROC. arts. 47.01–.12. VSC participated in a hearing before a municipal court judge pursuant to article 47.01a. See id. art. 47.01a. The municipal court awarded eighteen of the vehicles to their owners. Fourteen of those eighteen awards were contingent upon the owners paying VSC the storage fees due. The municipal court awarded the remaining thirty-two vehicles to VSC.[1]

Even though its district court action remained pending, VSC contends that the City seized a total of 276 additional vehicles, and that the City stored some of the seized vehicles, released some to their owners, and sold the rest, but failed to pay VSC any storage fees collected from those sales. The City admitted that it seized 326 vehicles from VSC's lot. The City does not indicate whether it used Chapter 47 hearings to dispose of these additional vehicles, and the record does not provide the answer. VSC asserts that the City did not notify it of any hearings on the remaining 276 vehicles and did not advise VSC of how it had disposed of any of the vehicles. Moreover, the City allegedly did not inform the municipal court that VSC was an interested party or had asserted a right to possession, as required by statute. See id. art. 47.03 ("The officer shall notify the court of the names and addresses of each party known to the officer who has a claim to possession of the seized property."). The City does not challenge these assertions, and they are taken as true for purposes of this appeal of the plea to the jurisdiction.

---

1. VSC does not seek damages for the loss of any of the fifty vehicles subject to the Chapter 47 hearings.

VSC contends that it notified the City that it had a property interest in the vehicles and requested notice of any hearings. It further claims it had "a legitimate and recognized property interest" in the seized vehicles that the City destroyed by disposing of the vehicles without notice to VSC. The City does not dispute that it did not pay VSC any storage fees on the vehicles. At the trial court and court of appeals, the City asserted that because VSC was not the owner of the vehicles, it was not entitled to notice of Chapter 47 hearings.

VSC's suit against the City in state court was amended multiple times, eventually alleging various state and federal causes of action. In its Fourth Amended Petition, filed just before the case was removed to federal court,[2] VSC alleged, among other things, that it was an "interested person" for purposes of Chapter 47, that it had a possessory property interest in the seized vehicles, and that the City's actions constituted a taking under state and federal law. It sought injunctive relief, damages, and declaratory relief. VSC pled that the trial court "should specifically make a determination as to the rightful possession of the seized vehicles still in Defendants' possession and Plaintiff's property interest in these vehicles as well as vehicles recovered by Plaintiff in the future...."

Later, in VSC's Sixth Amended Petition, the live petition for this appeal, VSC alleged that the City had disposed of the remaining 276 vehicles. Nonetheless, it still sought, contrary to the Court's suggestion, relief under Chapter 47. VSC alleged that the City "intentionally entered onto Plaintiff's property and seized vehicles to which Plaintiff had a superior right to possess and in which Plaintiff had a recognized property interest," that it was entitled to notice under Chapter 47, that the Court should declare its superior rights in the vehicles and that the City lacks authority to seize and dispose of the vehicles, and that it was entitled to damages for the City's alleged taking of its interest in the vehicles.

Two claims are the subject of this appeal. One alleges that the City's seizure and subsequent disposition of the vehicles without notice to VSC was a taking of VSC's property interest in the vehicles for public use and violated VSC's right to just compensation under the Texas and United States Constitutions. TEX. CONST. art. I, § 17; U.S. CONST. amends. V, XIV § 1. The second cause of action sought a declaratory judgment against the City related to its towing policies and its entitlement to storage fees.

The City filed a plea to the jurisdiction, asserting VSC could not state a valid takings claim and that VSC alleged no other basis to waive the City's governmental immunity. The City did not allege at the trial court that VSC's claims were unripe or otherwise not justiciable because VSC failed to request a hearing under Chapter 47. The trial court denied the plea to the jurisdiction, and the City brought an interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE § 51.014(a)(8) (permitting interlocutory appeals from a court order that grants or denies a plea to the jurisdiction by a governmental unit). The court of appeals affirmed the trial court ruling as to the "public use" state and federal tak-

**2.** The City removed the case to federal district court. At VSC's request, the federal court remanded three of the causes of action to the state court and abated the remaining federal claims until disposition of the state court litigation. The third cause of action, a takings claim for private use, is not at issue because the court of appeals dismissed it. Neither party appeals that decision.

ings claims [3] and affirmed the denial of the plea as to VSC's declaratory judgment action. 242 S.W.3d 584, 599 (Tex.App.-Dallas 2008, pet. granted). The City appealed, and we granted review.

The City argues that the trial court did not have jurisdiction because VSC does not have a valid property interest in the seized vehicles to assert a state takings claim. It argues that even if there is a property interest, the seizures themselves were not compensable takings. Although the parties discussed the applicability of Chapter 47 at oral argument, in its briefing to this Court the City did not argue that Chapter 47 was a prerequisite to suit or that its plea to the jurisdiction should be granted for VSC's failure to exhaust any presuit procedure. However, today the Court avoids the issues raised by the parties and instead holds that the plea to the jurisdiction should be granted, not because VSC cannot state a takings claim, but because its takings claim is precluded by VSC's failure to seek relief under Chapter 47. A close examination of Chapter 47 will help to understand the extent of the Court's error.

## II. Chapter 47

### A. Structure and Use of Chapter 47

Various statutes provide that a peace officer may seize property that has been, or appears to be, stolen. *E.g.*, TEX. TRANSP. CODE § 501.158(a). Chapter 47 of the Texas Code of Criminal Procedure provides a mechanism for return of that property. When an officer seizes property,

he shall immediately file a schedule of the same ... with the court having jurisdiction of the case, certifying that the property has been seized by him, and

the reason therefor ... [and] shall notify the court of the names and the addresses of each party known to the officer who has a claim to possession of the seized property.

TEX.CODE CRIM. PROC. art. 47.03. If the ownership of the property is disputed, the officer "shall hold it subject to the order of the proper court." *Id.* art. 47.01(a). If no criminal trial is pending, an appropriate judge, which may include a district judge, county court judge, statutory county court judge, magistrate, or justice of the peace "may hold a hearing to determine the right to possession of the property, upon the petition of an interested person, a county, a city, or the state." *Id.* art. 47.01a(a). Following the hearing, the judge may award the property "to whoever has the superior right to possession," or to the state, pending resolution of the criminal case. *Id.* "If it is shown in a hearing that probable cause exists to believe that the property was acquired by theft or by another manner that makes its acquisition an offense and that the identity of the actual owner of the property cannot be determined," the court may award possession to the state for official purposes, for disposition as unclaimed property, or for destruction. *Id.* art. 47.01a(b).

Chapter 47 is different from civil forfeiture, which applies to seized property that was used in the commission of a crime. *See* TEX.CODE CRIM. PROC. arts. 59.01–.14. While Chapter 47 gives a small framework for the quick disposition of property "alleged to have been stolen," it leaves important gaps in its procedure. *Id.* art 47.01. For example, the chapter does not refer to a party filing a "petition" or initiating a "civil action," but only that an interested party may request a "hearing." It does

---

3. VSC contended, in the alternative, that the seizures constituted a taking of private property for a "private use." The court of appeals reversed the trial courts' denial of the plea on this claim, which is not before us.

not require notice to interested parties, as the civil forfeiture statute does. *Cf. id.* art. 59.04(b) (requiring that, to institute civil forfeiture proceedings, the state's attorney "shall cause certified copies of the notice to be served on [relevant] persons in the same manner as provided for the service of process by citation in civil cases"). Chapter 47 is schizophrenic in what the judicial officer may determine, whether it is the person who "has the superior right to possession," *id.* art. 47.01a(a)(1), or who is the "actual owner" of the property, *see id.* arts. 47.01(a), .02(b), .04. *Compare Universal Underwriters Grp. v. State*, 283 S.W.3d 897, 900 (Tex.App.-Houston [14th Dist.] 2009, no pet.) ("[U]nder article 47.01a, the trial court determines 'superior right to possession,' rather than ownership."), *and Perry v. Breland*, 16 S.W.3d 182, 189 (Tex.App.-Eastland 2000, pet. denied) ("The justice court had no jurisdiction ... to determine ownership [of the property at issue] ...."), *with Allstate Ins. Co. v. Troy's Foreign Auto Parts*, No. 05–00–01239–CV, 2001 WL 840613, at \*3 (Tex.App.-Dallas July 26, 2001, pet. denied) ("[Chapter 47] provides the court with the power to direct the property be restored to the owner. In addition, the right to possession without legal ownership would render the possession useless.... The municipal court has jurisdiction to award both possession and title ...." (citations omitted)). And it certainly does not include any expression that Chapter 47 is the *exclusive* method of determining ownership, or a right to possession. "Nothing in the statute suggests that Chapter 47 provides the exclusive forum for establishing ownership." *Tipton Int'l, Inc. v. Davenport*, No. 10–02–00242–CV, 2004 WL 1474663, at \*3 (Tex.App.-Waco June 30, 2004, no pet.).

Because of the lack of specificity and comprehensive scheme, the only way to view Chapter 47 is as a *process* rather than a *proceeding*, applicable to a number of different judicial forums. Chapter 47 provides that a district, county court, statutory county court judge, or a justice of the peace or municipal judge with magistrate jurisdiction may "hold a hearing" to determine disposal of allegedly stolen property. TEX.CODE CRIM. PROC. art. 47.01 a(a)(1). It is not surprising that our courts of appeals have dealt with Chapter 47 claims not only brought as stand-alone claims, but also as independent tort claims and counterclaims brought by the state in tort and constitutional civil rights actions against it. *See York v. State*, 298 S.W.3d 735, 741 (Tex.App.-Fort Worth 2009, pet. filed) (alleging takings violation through improper disposal of trailer under Chapter 47); *Universal Underwriters*, 283 S.W.3d at 899 (noting that the state filed a "Petition for Disposition of Stolen Property" under Chapter 47); *Allstate Ins. Co.*, 2001 WL 840613, at \*1 ("Seeking possession of [the property] under article 47.01a [the parties] attended a hearing...."); *City of Pasadena v. De Los Santos*, No. 01–98–00104–CV, 1999 WL 339335, at \*1 (Tex.App.-Houston [1st Dist.] May 27, 1999, pet. denied) (dismissing appeal from a trial court order holding that the city was entitled to possession of property in action wherein citizens sued city for civil rights violations for wrongful seizure and tort claims, and the city counterclaimed for possession of the property under article 47.01(a)). No wonder that the City did not claim that a separate action under Chapter 47 was a prerequisite to suit. And no wonder that VSC argued, and the City disputed, that it was entitled to a declaration from the trial court that VSC is an entity with a "claim to possession of the seized property" and entitled to notice under article 47.03. 242 S.W.3d at 599 (noting, and not reaching, the City's contention

that VSC is not entitled to notice under Chapter 47).[4]

## B. The Court's Chapter 47 Prerequisite

But despite this, the Court contends that VSC loses its case here because it did not take advantage of the "statutory remedy" of Chapter 47. There is a ripeness requirement for federal takings claims based on state action. In general, for a federal takings claim to be ripe, the owner of the allegedly taken property must (1) obtain a final decision regarding the application of the regulations to the property at issue from the government entity charged with implementing the regulations, and (2) utilize state procedures for obtaining just compensation. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).[5] There is some authority to suggest that the *Williamson County* requirements apply to physical takings as well as the more common regulatory taking scenarios. *See Severance v. Patterson*, 566 F.3d 490, 496–97 (5th Cir.2009). But *Williamson County* and its progeny do not apply in this situation.

The Court's only substantial authority[6] for its proposition that Chapter 47 pre-

---

**4.** The Court says that the dissent's position could hamper law enforcement. That misconstrues the dissent. First, to be clear, this case does not involve property subject to civil forfeiture because of its use in the commission of a crime, notwithstanding the Court's reliance on forfeiture cases. That is not at issue and no one argues it is. The vehicles were towed to a private, licensed storage facility (VSC) for safekeeping. Second, the Court chastises the dissent saying "it is difficult to charge the government with the duty of notice." 347 S.W.3d 231. Actually, the Court's quibble is with the statute. Chapter 47 mandates, presumably to allow for notice of the proceeding, that when an officer seizes property alleged to have been stolen, he shall "immediately file a schedule of the same … [and] notify the court of the names and addresses of each party … who has a claim to possession of the seized property." TEX.CRIM. PROC.CODE art. 47.03. Moreover, federal courts have held that, even in forfeiture cases, if the government intends to make permanent the deprivation of property seized at the time of an arrest, adequate notice is required. *United States v. Cardona–Sandoval*, 518 F.3d 13, 16 (1st Cir.2008) (concerning personal items destroyed nearly two years after confiscation); *see Matthias v. Bingley*, 906 F.2d 1047, 1052 (5th Cir.1990). Simply knowing that the government confiscated the property at some time in the past is insufficient.

**5.** The first part of the *Williamson County* rule (most applicable to regulatory takings) ensures that there is a regulatory interpretation about the scope of the regulation for the court to determine whether the regulation goes "too far." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 929 (Tex.1998). It has been applied to state court takings claims. But the second part—the exhaustion requirement the Court sees as determinative—has not been applied to state takings. "Ordinarily, a plaintiff must seek compensation through *state inverse condemnation proceedings* before initiating a takings suit in *federal court*, unless the State does not provide adequate remedies for obtaining compensation." *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 n. 8, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997) (emphasis added) (citation omitted). In other words, in deference to the state and the Fifth Amendment's protection against the state depriving property "without just compensation," to state a claim under the Fifth Amendment, a state *court* action must come first. That is exactly what VSC did in this case.

**6.** The Court cites a number of federal appellate court opinions for the proposition that "where a claimant fails to take advantage of a State's post-deprivation procedures, that claimant cannot then complain of the State's subsequent disposition of the property." 347 S.W.3d 231 n. 17. The cases are inapposite. *Revell v. Port Authority of New York* is a case in which the appellate court held that because the plaintiff failed to file a state tort lawsuit for conversion or a writ of replevin before seeking remedies in federal court for deprivation of property without due process. 598 F.3d 128, 139 (3d Cir.2010). VSC's requests for injunctive and declaratory relief certainly

cludes a takings claim is one distinguishable case. In *Hays v. Port of Seattle*, a contractor entered in to a "cost plus" contract with the Commissioner of Public Lands of the State of Washington to excavate waterways, secured by a lien upon the shorelands. 251 U.S. 233, 234, 40 S.Ct. 125, 64 L.Ed. 243 (1920). After the contractor began work, the Commissioner wanted to change plans, and when neither party provided new plans, the work stalled. *Id.* at 235, 40 S.Ct. 125. Seventeen years later, the Washington state legislature enacted statutes establishing the Port of Seattle and vested title to a port authority, which took over the waterway and performed its own excavation. *Id.* at 236, 40 S.Ct. 125. Hays brought a bill in equity, seeking to enjoin the legislature's act, as he alleged that it impaired his contract and took property without due process. *Id.* at 237–38, 40 S.Ct. 125. On the contract claim, the Supreme Court essentially held that he had abandoned the contract. *Id.* at 237, 40 S.Ct. 125. On the deprivation of property without due process claim, the Court held that Hays was barred from relief by laches. *Id.* at 238–39, 40 S.Ct. 125. It noted that, if he had not delayed, he could have filed a claim under what was a similar tort claim/state inverse condemnation proceeding under the then-active statute. *Id.* at 238, 40 S.Ct. 125. The Court held that such a procedure "satisfies the requirement of due process of law as clearly as if the ascertainment of compensation had preceded the taking." *Id.* The case is simply an early example of the *Williamson County* rule.

I see no legally determinative distinction in this context between protecting one's property rights by requesting a hearing before a municipal judge under Chapter 47 and promptly filing an injunction action in district court after the original seizures. Surely such a lawsuit, when there is nothing in Chapter 47 that makes it the exclusive remedy or establishes it as a prerequisite to a takings claim, is sufficient under *Williamson County*. This is not an inverse condemnation regulatory taking claim, where an administrative agency must determine the scope of the regulation as a prerequisite to suit. Nor is this a lawsuit commanded by the Legislature to be an "exclusive" remedy for a particular wrong. Chapter 47 comprehends a lawsuit, in one form or another.

The Court's holding creates a new rule preferring one type of civil claim over another, when no governing statute or case law has heretofore required it. It suggests that "[c]laims under chapter 47 may be brought in the same suit as other claims," 347 S.W.3d 231 n. 7, but provides no analysis why its rule that *precludes* the civil claims brought by VSC *permits* claims specifically under Chapter 47.

qualifies in that case. Likewise, in *Mora v. City of Gaithersburg*, the Fourth Circuit held that a plaintiff's § 1983 procedural and substantive due process claim seeking the return of firearms was "like a state law claim dressed up in due process clothing," and thus declined to exercise supplemental jurisdiction over the claims. 519 F.3d 216, 231 (4th Cir. 2008). Once again, we are in state court, VSC's constitutional claims are takings, not due process, and VSC did assert claims of injunctive and declaratory relief against the governmental entities. *McKinney v. Chidley* is an unpublished Ninth Circuit case in which the panel merely recites that the pro se plaintiff "did not follow California state law procedures for recovering property" and awarded summary judgment to the law enforcement officials. 87 Fed.Appx. 615, 617 (9th Cir. 2003) (unpublished mem. op.). These cases do not address a state inverse condemnation claim, address a plaintiff's attempt for injunctive relief and request to be named as an "interested person" in the state court procedure for return of property, or are otherwise applicable to VSC.

### C. VSC's Pleadings and Chapter 47

Even assuming that the Court is correct in its assertion that Chapter 47 is somehow a prerequisite to other types of tort actions (which no party argues, no courts have held, and which the court of appeals precedent cited above demonstrates is simply not how the procedure works), I would hold that VSC sufficiently asserted its rights. The Court claims that "VSC, having notice of the vehicles' seizure, should have initiated chapter 47 proceedings, both to notify the government that it was asserting an interest in the vehicles and to determine its interest in them. VSC failed to do so." 347 S.W.3d 231 n. 17. The Court simply ignores VSC's lawsuit and pleadings in reaching this unsupported conclusion.[7]

First, VSC sought a temporary restraining order. It later sought injunctive relief against the City, requesting, among other things, prohibitions against the City from "[o]rdering the release of any vehicle (in Plaintiff's possession) for a reduced fee or charge" and from "releasing vehicles seized from Plaintiff that Plaintiff is authorized by law to possess and in which Plaintiff has a recognized property interest without requesting a hearing under Chapter 47 of the Texas Code of Criminal Procedure and including Plaintiff as an inter-

ested party and notifying Plaintiff of the hearing." It sought declaratory relief, including a declaration that VSC "is the rightful possessor of seized vehicles currently in possession of" the City, and that VSC "has a property interest in the seized vehicles and is an interested person entitled to a Chapter 47 property hearing on vehicles seized" by the City. VSC requested relief in the nature of Chapter 47 (even though, as discussed above, it shouldn't have to) by specifically requesting the court "make a determination as to the rightful possession of the seized vehicles still in Defendants' possession and Plaintiff's property interest in these vehicles. . . ." I see no significant difference between such a request for relief and a request to "hold a hearing to determine the right to possession of the property, upon the petition of an interested person." TEX.CODE CRIM. PROC. art. 47.01a(a). At a minimum, VSC "notif[ied] the government that it was asserting an interest in the vehicles" and requested a "determin[ation of] its interest in them." 347 S.W.3d 231 n. 17. Particularly because VSC most likely did not believe that it could bring a claim under Chapter 47, and particularly because the City argued—up until oral argument before this Court—that VSC was not entitled even to *notice* of a Chap-

---

7. The Court contends that VSC did not adequately pursue its Chapter 47 remedies and failed to raise them in its response to the City's plea to the jurisdiction. The record shows otherwise. After the City filed its plea to the jurisdiction (on June 24, 2005) in the state district court case, VSC filed its Sixth Amended Petition (on July 25, 2005) continuing to seek a declaratory judgment for Chapter 47 relief and compensation for a taking, as I specifically set out in Section I above. The Sixth Amended Petition did not contain the specific requests for possession that were in earlier pleadings because VSC believed, and pled, that the City had already disposed of all the vehicles. However, in its response (filed on July 27, 2005) to the City's plea, VSC

again asserted its "property interest and/or lien for towing, storage, other fees and taxes" with respect to the vehicles taken, that "VSC is an interested party with a claim to possession entitled to notice and a hearing pursuant to Chapter 47 of the Texas Code of Criminal Procedure," that it brings the claim for a declaration of "its rights under Chapter 47" and that the City committed a taking for which VSC is entitled to just compensation. Certainly, in a notice pleading jurisdiction (and perhaps even if not), VSC's pleadings raise the issue of its rights and remedies under Chapter 47. Discovery hearings were held but we cannot discern from the record whether hearings were held to address the merits of VSC's complaints.

ter 47 hearing—it is difficult to imagine what the Court would have had VSC do. Under our rules of notice pleading, VSC satisfied the prerequisites the Court musters. It does not deserve to have its claims dismissed.

Of course, a claimant may not simply sit on his rights for an unreasonable time period, knowing that the government has seized his property, and then claim that the government has taken his property when it has been sold. A claimant has some duty to investigate the status of his property and take reasonable steps to secure it from the government or receive just compensation for the taking. *See, e.g., Hallco Tex., Inc. v. McMullen Cnty.,* 221 S.W.3d 50, 74 & n. 38 (Tex.2006) (Hecht, J., dissenting) (discussing Texas cases applying limitations periods or laches to regulatory takings claims); *see also, e.g., Waddy v. City of Houston,* 834 S.W.2d 97, 102 (Tex.App.-Houston [1st Dist.] 1992, writ denied) (recognizing that an action for inverse condemnation of property is barred after the ten-year period necessary to acquire land by adverse possession, but an inverse condemnation action for damage to property is governed by the two-year statute of limitations).

VSC was not dilatory in protecting its rights. VSC promptly sought an injunction against the City. Thereafter, VSC participated in several Chapter 47 proceedings disposing of seized vehicles prior to seizure of the vehicles at issue in this proceeding. VSC was notified of the proceedings, and in most cases the municipal court either returned the vehicles to VSC or to the owners subject to the payment of fees owed to VSC. These proceedings protected VSC's property rights and ensured that VSC's liens were not improperly destroyed. Although VSC did not know it and the City disputed it, VSC could have included an explicit request for the trial court to hold a hearing pursuant to Chapter 47, but did not do so. On the other hand, the City could have filed a counterclaim in district court seeking possession and disposition of the vehicles, but it evidently did not do so. *See De Los Santos,* 1999 WL 339335, at *1. Instead, according to VSC, the City unilaterally determined that VSC did not have an interest in the vehicles entitling VSC to notice of any Chapter 47 proceedings and, notwithstanding the pendency of a lawsuit over the same vehicles, disposed of the vehicles by either returning them to their owners or selling them and keeping the proceeds. It is difficult to understand why the Court requires a party to file a separate civil action, or to use "magic words" in its petition invoking a malleable and incomplete procedure to enforce rights covered by a civil action as a prerequisite to filing the already-pending litigation.

### D. Due Process

The Court states that "VSC suggests . . . that chapter 47 is constitutionally infirm because it does not require that the City notify claimed owners of these proceedings. Disputes about proper notice invoke procedural due process, not the Takings Clause." 347 S.W.3d 231. VSC is not claiming a violation of due process, and the City has not argued that Chapter 47 is a prerequisite to a takings claim. It is the Court's invocation of a prerequisite to Chapter 47 that does that. Rather, in its active petition, VSC's complaint was about its money—it alleged that the City intentionally seized property for a public purpose in which VSC had a property interest and suffered damages. A claim for deprivation of due process cannot be the basis for a takings claim.

However, for the reasons articulated above, if Chapter 47 were required as a prerequisite to suit, I disagree that Chap-

ter 47 "complies with both the Texas and United States Constitutions" to protect VSC's property interests. Although any interested party may request a hearing under Chapter 47, the existence of the Chapter 47 proceeding itself would not immunize a governmental entity from takings liability.[8] The proceeding may result in returning the vehicle to VSC (and thus potentially mooting VSC's takings claim), and the municipal court may return a vehicle to an owner subject to the owner paying VSC's fees (also potentially mooting VSC's takings claim). Yet, no provision of Chapter 47 specifically deals with ownership of the vehicle or of the lien that is created when VSC properly takes possession of a vehicle and provides notice as required by the Property Code. Likewise, while article 47.03 requires that an officer provide notice to the relevant court "of the names and addresses of each party known to the officer who has a claim to possession of the seized property," nothing in Chapter 47 requires that the court or anyone else provide notice to the vehicle's owner or any other person with an actual interest in the seized vehicle and/or of the hearing. This facial infirmity in the statute has been recognized and addressed informally by municipal court judges who indicate in their Bench Book for Chapter 47 hearings that such notice should be given. TEXAS MUNICIPAL COURTS EDUCATION CENTER, 2008 BENCH BOOK 45 (2008); cf. TEX.CODE CRIM. PROC. art. 47.03. As discussed above, I believe that disposing of property without notice to the property owner would raise serious due process concerns. But

those concerns arise only if a Chapter 47 hearing is a prerequisite to a takings suit.

The Court also states that once an owner or interested party's property has been legitimately seized by the government, the government need not give notice even years later that it is about to permanently dispose of the property. 347 S.W.3d 231. There are two responses to this position. First, it makes no sense. Even though criminal proceedings in which such property may be germane may take months or years, the Court indicates that the state might simply dispose of potentially valuable property after its usefulness for criminal prosecutions wanes or it has been determined not to have been stolen, without giving the owners or interest holders an opportunity to intervene. The property owners do not know when the confiscated property is no longer needed. After legitimately seizing private property, the government should give notice to the owners and interest holders before disposing of the property. Even in forfeiture cases, if "the government intends to make permanent the deprivation of property seized at the time of an arrest, whether through forfeiture or destruction of that property, adequate notice is required." *United States v. Cardona–Sandoval*, 518 F.3d 13, 16 (1st Cir.2008); *see Matthias v. Bingley*, 906 F.2d 1047, 1052–53 (5th Cir.1990). Second, VSC did file an injunction action in state district court to protect its interests in the property and asserted that the district court should determine ownership and possession of the vehicles. But the Court's holding makes that action useless.

---

8. Chapter 47 is not a forfeiture statute. The vehicles at issue in Chapter 47 proceedings, while they may have been stolen, are not contraband, instrumentalities of crime, or proceeds of criminal activity. The purpose of Chapter 47 is to return stolen property to its rightful owner. The government may dispose of the property, not because the property is

"tainted" and should be taken from the public domain, with the proceeds going to the state, but only when the state, after some reasonable search, cannot ascertain the property's owner. To use Chapter 47 to circumvent the procedure for seizing contraband, a much higher threshold of proof for the state, would raise serious constitutional concerns.

The Court errs when it holds that a Chapter 47 proceeding is the only state adjudication that may serve as a prerequisite to a takings claim. It compounds its error by holding that VSC did not live up to its newly created standard in its pleadings in district court. I would hold that no such prerequisite exists, either in our case law on takings or in Chapter 47 itself, and I would not dismiss VSC's claims on that basis.

### III. VSC's State Takings Claim

Because I would not hold that VSC's failure to seek possession of the vehicles specifically under Chapter 47 precludes its takings claim, I now proceed to analyze the merits of the dispute. The City asserts the trial court erred in denying its plea to the jurisdiction to VSC's takings claim. The City does not have immunity from a valid takings claim. *See Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex.2001). However, if the plaintiff fails to allege a valid takings claim, the City retains its immunity from suit. *See id.* (affirming a grant of a governmental entity's plea to the jurisdiction where the plaintiff's constitutional takings claim failed). Whether particular facts constitute a taking is a question of law. *Id.* (citation omitted).

Article one, section seventeen of the Texas Constitution provides: "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person...." Tex. Const. art. I, § 17. A takings claim consists of three elements: (1) an intentional act by the government under its lawful authority, (2) resulting in a taking of the plaintiff's property, (3) for public use. *See Little–Tex Insulation Co.*, 39 S.W.3d at 598; *see also State v. Holland*, 221 S.W.3d

639, 643 (Tex.2007); *City of Dallas v. Jennings*, 142 S.W.3d 310, 313 (Tex.2004).

The City challenges VSC's takings claims on four grounds: (1) VSC could not have a property interest in stolen vehicles; (2) the City did not seize VSC's liens or debts, only the vehicles; (3) the seizure was not for "public use"; and (4) the seizure occurred under the proper and reasonable exercise of the City's "police power" or some other exception to a takings claim.

### A. VSC's Property Interest

I would hold, as the Court "assume[s]," 347 S.W.3d 231 n. 10, that VSC had a cognizable property interest in the vehicles through the "garageman's lien" in the Property Code. "A garageman with whom a motor vehicle ... is left for care has a lien ... for the amount of the charges for the care, including reasonable charges for towing ... to the garageman's place of business and excluding charges for repairs." Tex. Prop.Code § 70.003(c). The Property Code does not define "garageman" or identify exactly what "care" is required for the lien to attach. The dictionary defines "care" as "protection; charge; temporary keeping as for the benefit of or until claimed by the owner." Random House Unabridged Dictionary (1987). Vehicle Storage Facilities must provide protection and keep vehicles for the benefit or until claimed by the owner. They must also provide reasonable storage efforts to protect vehicles, "such as locking doors, rolling up windows, and closing doors, hatchbacks, sunroofs, trunks, hoods, or convertible tops" and putting tarps over vehicles whose interiors are open to the elements. 16 Tex. Admin. Code § 85.719(a), (b). Thus, under the plain language of the Property Code, a vehicle storage facility that follows the require-

ments of the statute would qualify as a "garageman."

The City argues that the VSFA precludes VSC's claim to garageman's lien rights because only the VSFA determines the rights and interests of a "Vehicle Storage Facility." Although that act regulates the operation of "Vehicle Storage Facilities" which, among other things, store at least ten vehicles each year without the owners' consent, TEX. OCC.CODE §§ 2303.001–.003, .151–.161, no language in the VSFA excludes Vehicle Storage Facilities from the benefits of the garageman's lien. Further, the VSFA allows a vehicle storage facility to withhold a vehicle from its owner or operator "if the owner or operator of the vehicle does not pay the charges associated with delivery or storage of the vehicle...." *Id.* § 2303.160(c). And the garageman's lien statute specifically recognizes that a garageman may come into possession of a vehicle not only through the consent of the owner of the vehicle but also "under a state law or city ordinance." TEX. PROP.CODE § 70.004(a). The VSFA specifically permits Vehicle Storage Facilities to retain possession of vehicles if an owner refuses to pay the storage charges, and the garageman's lien statute recognizes that a garageman can come into possession of a vehicle in a manner other than it being left by the owner. The two statutes are not mutually exclusive, but complementary.

Further, the garageman's lien statute can reasonably be read to include vehicles "left for care" by those other than the vehicles' owners. The statute uses the passive voice—"is left for care"—indicating that who leaves the vehicle with the garageman is inconsequential to whether the lien attaches. *Id.* § 70.003(c). The next section of the Property Code specifically contemplates a garageman's lien in favor of one who stores a vehicle without the owner's consent. "A holder of a lien under Section 70.003 on a motor vehicle ... who obtains possession ... under a state law or city ordinance shall give notice ... to the last known registered owner and each lienholder of record...." *Id.* § 70.004. The garageman's lien statute grants a lien to an entity, including a Vehicle Storage Facility, who came into possession of the vehicle lawfully. *See* TEX. PROP.CODE § 70.003(c) ("A garageman with whom a motor vehicle ... is left for care has a lien...."). VSC may acquire a garageman's lien on vehicles "left for care" with them, regardless of whether they were left voluntarily or without the owners' consent.

I would hold that if VSC can show these vehicles were left for care with them and that they followed the proper procedures under both the VSFA and the Property Code, VSC establishes a valid garageman's lien in the vehicles and thus a valid property interest worthy of protection under the takings clause.

### B. Liens and the Takings Clause

The City contends that even if VSC had a property interest in liens on the stored vehicles, the recovery by police of stolen vehicles cannot be the basis of a compensable taking. The City erects a strawman, contending that the vehicles were stolen.

First and foremost, there is no judicial determination in the record that any of the vehicles at issue were in fact stolen. There appears to have been a sufficient basis for DPD initially to obtain possession. *See* TEX. TRANSP. CODE § 501.158(b). However, whether the vehicles were stolen is a factual matter to be determined at the trial court. Because the City has not shown the vehicles to have been stolen, the City's contention that a lien cannot attach

to a stolen vehicle that has been innocently stored need not be addressed.[9]

The United States Supreme Court considered a similar takings claim in *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).[10] In *Armstrong*, materialmen delivered materials to a prime contractor for use in constructing U.S. Navy personnel boats. Under state law, they obtained liens on the vessels. *Id.* at 41, 80 S.Ct. 1563. The prime contractor defaulted on his obligations to the United States, and the government took title to and possession of the uncompleted hulls and unused materials. *Id.* The United States government argued that any destruction of the plaintiffs' liens could not constitute a taking due to the government's immunity. *Id.* at 47, 80 S.Ct. 1563. The Court held:

> The total destruction by the Government of all value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment "taking" and is not a mere "consequential incidence" of a valid regulatory measure. Before the liens were destroyed, the lienholders admittedly had compensable property. Immediately afterwards, they had none. This was not because their property vanished into thin air. It was because the Government for its own advantage destroyed the value of the liens. . . . Neither the boats' immunity, after being acquired by the Government, from enforcement of the liens nor the use of a contract to take title relieves the Government from its constitutional obligation to pay just compensation for the value of the liens the petitioners lost and of which loss the Government was the direct, positive beneficiary.

*Id.* at 48–49, 80 S.Ct. 1563. Thus, the state violates the takings clause by destroying valid liens on property for public use without just compensation. *See also United States v. Sec. Indus. Bank*, 459 U.S. 70, 75, 78, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982) (holding that liens were property protected by the takings clause of the Fifth Amendment); *Ft. Worth Improvement Dist. No. 1 v. City of Fort Worth*, 106 Tex. 148, 158 S.W. 164, 168 (1913) ("The word 'property,' as used in [article one, section seventeen of the Texas Constitution], is doubtless used in its legal sense, and means not only the thing owned, but also every right which accompanies ownership and is its incident.").

Whether the City destroyed VSC's liens is a question of fact that the trial court did not have an opportunity to decide, as that question is the subject of an interlocutory appeal of a plea to the jurisdiction. Rath-

---

9. The City has presented no case and I have not found any case from another jurisdiction holding that a garageman's lien for vehicle storage costs cannot attach to stolen vehicles that the City takes to a storage lot for safekeeping. Further, this holding is limited to *liens* created for the safekeeping of allegedly stolen property and is separate and apart from our precedent regarding transfer of *title* to stolen property by a thief to a subsequent purchaser. *Cf. McKinney v. Croan*, 144 Tex. 9, 188 S.W.2d 144, 146 (1945) (recognizing the common law rule that a subsequent purchaser may not acquire title to stolen property from a thief) (citations omitted).

10. The takings clauses in the United States and Texas Constitutions are comparable, though worded differently, and so Texas courts have looked to federal jurisprudence for guidance on the constitutionality of a taking. *Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 669 (Tex.2004); *City of Austin v. Travis Cnty. Landfill Co.*, 73 S.W.3d 234, 238–39 (Tex.2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 932 (Tex.1998). The most recent amendment to article I, section 17, limiting when the state may condemn land for private development, does not apply to this case. TEX CONST. art. I, § 17.

er, the question to this Court is whether VSC can overcome the City's plea to the jurisdiction and state a valid takings claim. According to its various pleadings, VSC alleges that the City, after seizing the vehicles, took one of three possible actions: (1) it stored the vehicles and is still storing them (though, by the time of the Sixth Amended Complaint, it seems that VSC believed that the City had disposed of all of the vehicles); (2) it returned the vehicles to their rightful owners; or (3) it sold the vehicles and kept the proceeds. In all three scenarios, VSC claims it was deprived of fees for its storage of the vehicles.

Regardless of whether VSC's lien is possessory or nonpossessory, VSC's lien could be foreclosed on, and VSC can pursue its lien rights for storage fees because it did not voluntarily relinquish possession of the vehicles. *See Paul v. Nance Buick Co.,* 487 S.W.2d 426, 427–28 (Tex.Civ.App.-El Paso 1972, no writ) (distinguishing between possessory and nonpossessory liens and noting that even in possessory liens, the lien and right to possession are not lost if the property is relinquished voluntarily). VSC is free to pursue its property interests allegedly taken in the seized vehicles in its state district court case or under Chapter 47 of the Code of Criminal Procedure. TEX.CODE CRIM. PROC. §§ 47.01 a, .02.

It is unclear how the City disposed of these vehicles, a crucial question of fact as to whether VSC can assert a valid takings claim. VSC claims the City destroyed its liens on the vehicles. The City offers no evidence to rebut this claim nor even an assertion of the disposition of the vehicles.

Therefore, a fact question remains, and I would hold that the trial court was correct to deny the City's plea to the jurisdiction.

### C. Police Power

The City argues that the vehicle seizures were a valid exercise of police power exempted from takings liability.[11] The distinction between the state's eminent domain power and police power has been the subject of much consternation, and attempts to distinguish the powers can involve courts in a "sophistic Miltonian Serbonian Bog." *Sheffield Dev. Co. v. City of Glenn Heights,* 140 S.W.3d 660, 671 (Tex. 2004) (quoting *City of Austin v. Teague,* 570 S.W.2d 389, 391 (Tex.1978) (further quotation and citation omitted)).

In *DuPuy v. City of Waco* is Court noted that the distinction is said to rest on "the relation which the property affected bears to the danger or evil which is to be provided against." 396 S.W.2d 103, 107 n. 2 (Tex. 1965) (quotation omitted). Police power involves the regulation of property that harms the community in order to prevent the harm; eminent domain involves the taking or destruction of private property for public use. *Id.* at 107 n. 3 (quotation omitted); *see also Tahoe–Sierra Preservation Council v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 323, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) ("This longstanding distinction between acquisitions of property for public use, on the one hand, and regulations prohibiting private uses, on the other, makes it inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a 'regulatory taking,' and vice versa."). But as the

---

11. VSC has a valid takings claim only if the City destroyed its lien on the vehicles, so I only analyze the exemption arguments in that specific situation, *i.e.,* if VSC can show that the City sold the vehicles and kept the proceeds. I would not reach the question of whether the seizure of stolen vehicles in order to return them to their rightful owner is a valid exercise of police power for which no compensation is owed.

Court conceded in *DuPuy*, "our refusal to compartmentalize an exercise of sovereignty as either police power or eminent domain for the resolution of problems arising under Article I, Sec. 17, of the Constitution rests upon the manifest illusoriness of distinctions between them." 396 S.W.2d at 107. On the other hand,

> it is universally conceded that when land or other property is actually taken from the owner and put to use by the public authorities, the constitutional obligation to make just compensation arises, however much the use to which the property is put may enhance the public health, morals or safety.

*Id.* at 107 n. 3 (citations omitted). Put another way, "[w]hen the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner ... regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof." *Tahoe–Sierra*, 535 U.S. at 322, 122 S.Ct. 1465 (citation omitted). The police power distinction may lead courts into a bog, but the law of physical takings rests on firm, dry land.

We have recognized that "[a] city is not required to make compensation for losses occasioned by the proper and reasonable exercise of its police power." *City of Coll. Station v. Turtle Rock Corp.,* 680 S.W.2d 802, 804 (Tex.1984). However, the state cannot commit a physical taking, by taking or destroying property, and escape liability for compensation by merely "labeling the taking as an exercise of police powers." *Steele v. City of Houston,* 603 S.W.2d 786, 789 (Tex.1980). The City argues that its actions do not amount to a physical taking because even if VSC's liens were somehow taken, they are intangible property and thus cannot be *physically* taken. But the liens in *Armstrong* were the same type of

property interest as those here, and as the Court stated there, "[t]he total destruction by the Government of all value of these liens, which constitute compensable property, has every possible element of a Fifth Amendment 'taking' and *is not a mere 'consequential incidence' of a valid regulatory measure.*" 364 U.S. at 48, 80 S.Ct. 1563 (emphasis added). The Court has affirmed this characterization of the government's destruction of liens in *Armstrong* as a physical taking. "The Government seeks to distinguish *Armstrong* on the ground that it was a classical 'taking' in the sense that the Government acquired for itself the property in question.... The classical taking is of the sort that the Government describes...." *Sec. Indus. Bank,* 459 U.S. at 77–78, 103 S.Ct. 407. I see no reason why intangible and valuable property interests cannot be physically taken and why the police power exception provides a free pass when government officials try.

Further, while the reasonable, necessary, and proper application of the police power may excuse a governmental unit from providing just compensation, there is nothing here to suggest that there is any police power interest in the taking of VSC's liens. The valid exercise of the police power over potentially stolen vehicles does not extinguish an undisputed and legally applied lien on the vehicle. Thus, these seizures and alleged sales of the vehicles do not constitute the proper exercise of the police power over VSC's liens, and *Turtle Rock* is not applicable to the situation at bar, despite its perhaps broad language.

VSC alleges that the City seized vehicles from their storage facility, disposed of them (thereby destroying all property interest they had in the form of liens), and kept the proceeds for itself. These actions satisfy the basic elements of a physical

taking—taking or destroying property for public use. As we have said, "[t]he social desirability of leaving government free to seek its own enrichment at the expense of those whom it governs under the guise that it has the power to regulate harmful conduct is not readily apparent." *Teague*, 570 S.W.2d at 393–94. The final destination of the seized vehicles is absent from the record, and we decline to speculate. But the City cannot avoid paying compensation to VSC by "labeling the taking as an exercise of police powers." *Steele*, 603 S.W.2d at 789.

### D. Special Exception

Finally, the City argues that we should carve out a special exception to a physical takings claim for the recovery of stolen property.[12] The City focuses its analysis on cases confirming the absence of takings liability for civil forfeiture proceedings against "innocent" owners, citing *Bennis v. Michigan*, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), and *State v. Richards*, 157 Tex. 166, 301 S.W.2d 597 (1957). But *Bennis* and *Richards*, civil forfeiture cases whose holdings rest on the unique nature of forfeiture as a criminal deterrent, are inapposite. Further, they affirm that an "innocent" owner's property cannot be forfeited when the property was taken without privity or consent. *Bennis*, 516 U.S. at 448–52 & n. 5, 116 S.Ct. 994; *Richards*, 301 S.W.2d at 599–600.

VSC has a valid lien, the loss of which may be compensable as a taking if the City, without notice, disposed of the vehicles and kept their proceeds. Because fact questions exist in this case, VSC has pled and submitted sufficient evidence to withstand the City's plea to the jurisdiction. I would thus hold that the immunity does not bar VSC's state takings claim at this stage.[13]

### IV. Declaratory Judgment

The City asserts the trial court erred in denying its plea to the jurisdiction as to VSC's declaratory judgment action. "A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex.1995). Based on the declaratory relief requested in the currently pending Sixth Amended Petition and VSC's current status, I agree with the Court that "there is no apparent conflict at all, and as such the relief sought is highly speculative and theoretical, incapable of settling any actual controversy between the parties." 347 S.W.3d 231 (citing *Bonham State Bank*, 907 S.W.2d at 467; *State ex rel. McKie v. Bullock*, 491 S.W.2d 659, 660 (Tex.1973)). I therefore concur in the Court's judgment on the declaratory judgment claim. However, I do not believe such a holding forecloses VSC's

---

**12.** Again, because I would hold that VSC can only have a valid takings claim if the City destroyed their liens, I only analyze whether an exception should be made if VSC can show that the City sold the vehicles and kept the proceeds after seizure.

**13.** VSC also brought a federal takings claim. The City contends that VSC's federal takings claim is unripe until VSC has sought and been denied compensation in state court, and therefore the trial court lacks jurisdiction.

"The fact that the federal constitutional guaranty is not violated if state law affords just compensation does not preclude both claims from being asserted in the same action. Recovery denied on the state takings claim may yet be granted on the federal claim, in the same action." *Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620, 646 (Tex.2004). I would thus agree with the court of appeals that the trial court correctly denied the City's plea to the jurisdiction on this issue.

Chapter 47–like claims related to possession of or rights in the past-seized vehicles.

### V. Conclusion

Evidence demonstrated that the City seized 276 vehicles VSC lawfully possessed and on which it had storage liens. VSC alleges that the City disposed of the 276 vehicles without notice of how, when, or where the disposal occurred. Although VSC immediately filed an injunction action in district court over the propriety of the City's seizures of its property and the payment of its storage fees for the vehicles, the Court holds that such action is useless in protecting VSC's property rights. I would hold that the trial court and court of appeals were correct to deny the City's plea to the jurisdiction. Even assuming the Court's prerequisites, I would hold that VSC's pleadings in the district court were sufficient to invoke the requested relief in Chapter 47 and thus VSC's entire case should not be barred. I would remand the case to the trial court to make a determination of the unanswered questions of fact and determine whether VSC's property was wrongfully taken.

I therefore respectfully dissent.