

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00468-CV

MICHAEL MILLER D/B/A ALL                                              APPELLANTS
ECONOMY FOREIGN &
DISMANTLING; AND ABC LATE
MODEL TRUCK & AUTO PARTS,
INC.

V.

RECOVERY SYSTEMS, INC. D/B/A                                      APPELLEES
PRO TOW WRECKER SERVICE;
H&W RISK MANAGEMENT INC.;
AND ROBERT WEST

----------

## FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

Appellants Michael Miller d/b/a All Economy Foreign & Dismantling[2] and ABC Late Model Truck & Auto Parts, Inc. appeal from the trial court's judgment ordering that they take nothing on their claims against Appellees Recovery Systems, Inc. d/b/a Pro Tow Wrecker Service (Pro Tow), H&W Risk Management Inc.,[3] and Robert "Bob" West. In two issues, Miller and ABC argue that their claims were not barred by limitations and that they produced sufficient evidence to defeat summary judgment. Because we hold that the trial court did not err by granting summary judgment, we affirm.

**Background**

Miller d/b/a All Economy is an auto and auto parts dealer. Miller owns ABC, also an auto and auto part dealer. The dispute in this case is over a trailer that Miller bought at an auction. Pro Tow towed the trailer to its storage facility upon the request of a hotel where the trailer had been left. Pro Tow stored the trailer for 157 days until it was sold at a public auction held by the City of Lewisville Police Department. On November 13, 2003, Miller paid $7,100 to buy the trailer at the auction. From the sale proceeds, the Lewisville Police Department paid Pro Tow $6,938.15 to compensate Pro Tow for the costs of towing and storing the trailer.

---

[2]In the appellate record, the name of this entity is spelled alternately "All Economy Foreign & Dismanteling" and "All Economy Foreign & Dismantling."

[3]H&W's original answer and the order granting summary judgment state that the correct name for this entity is H&W Risk Management Inc., a Division of Haas & Wilkerson Insurance, Inc.

The auction receipt given to Miller names All Economy as the purchaser and the Lewisville Police Department as the law enforcement agency selling the trailer. The auction receipt is on a form promulgated by the Texas Department of Transportation. The form states at the top, "AUCTION SALES RECEIPT FOR AN ABANDONED MOTOR VEHICLE SOLD BY A LAW ENFORCEMENT AGENCY AT PUBLIC AUCTION." For vehicles taken into custody under section 683.031 of the transportation code,[4] the form contains blanks to be completed with information related to the garagekeeper storing the vehicle. The completed receipt form given to Miller states that Pro Tow took the trailer into its possession on June 9, 2003. In the space for the date that the owner was notified by the garagekeeper, the date "6/22/2003" was filled in. The receipt lists "06/18/2003" as the date that the vehicle was reported to a law enforcement agency and "10/02/2003" as the date that the owner was notified by the law enforcement agency. Don Graham, evidence technician for the Lewisville Police Department, signed the receipt.

Miller transported the trailer to ABC's location. On April 2, 2004, The State of Texas initiated a proceeding under code of criminal procedure chapter 47 in a Grand Prairie justice of the peace court.[5] The State asserted that Grand Prairie

_____

[4]Tex. Transp. Code Ann. § 683.031 (West 2011) (providing when a motor vehicle left in a storage facility is considered abandoned and requiring that the facility report the abandonment to a law enforcement agency).

[5]Tex. Code Crim. Proc. Ann. arts. 47.01–.12 (West 2006 & West Supp. 2012).

3

police had seized the trailer based on information that it had been stolen on February 25, 2002. Robert West had reported the trailer stolen to H&W, his insurance company, on that date, and H&W had paid the loss. Miller appeared pro se at the hearing. After the hearing, the justice of the peace ordered that the trailer be returned to H&W. Miller did not appeal the justice court's judgment.

On January 19, 2005, Miller and ABC sued the City of Lewisville for negligence and for fraud. By amended petitions, Miller and ABC added Pro Tow, H&W, and West as defendants, asserting claims for violations of the Deceptive Trade Practices Act,[6] unjust enrichment, and fraud against Pro Tow. In their ninth amended petition, Miller and ABC alleged that Pro Tow had been contacted on July 24, 2003, by Lisa Kalista, who by affidavit claimed that the trailer belonged to her. They alleged that Pro Tow never disclosed to Miller that someone was claiming ownership of the trailer and that Miller would not have bought the trailer had Miller known. They alleged that Pro Tow asserted to the Lewisville police department that it had notified the owner when it had only given notice by publication in a notice providing a limited description of the trailer along with thirty-three other vehicles.

Miller and ABC asserted a claim for equitable subrogation against H&W and West based on the garageman's lien that they alleged Pro Tow had against

---

[6]Tex. Bus. & Com. Code Ann. §§ 17.41–.63 (West 2011 & West Supp. 2012).

4

H&W and West for storage fees. They did not specify the source of this garageman's lien.[7]

The City filed a plea to the jurisdiction, which the trial court granted. H&W and West filed a motion for summary judgment on the ground that Miller and ABC's claim for subrogation was barred by the statute of limitations.[8] They also asserted as a summary judgment ground that the claim failed as a matter of law because Miller did not involuntarily pay a debt owed by another because he bought the trailer voluntarily and because Pro Tow could not have asserted a lien against H&W and West. As a third summary judgment ground, they asserted that the claim should fail because Miller failed to present evidence in the justice of the peace case or to appeal its judgment.

Pro Tow also filed a motion for summary judgment. As grounds for summary judgment on the fraud claim, Pro Tow asserted that the fraud claim was barred by the statute of limitations; it made no representations to Miller about the trailer; Pro Tow had no duty to discuss the sale with Miller; it had no duty to notify the owner of the vehicle because the City of Lewisville was charged with giving

---

[7]*See, e.g.*, Tex. Prop. Code Ann. § 70.003 (West Supp. 2012) (providing that when a motor vehicle is left with a garageman for care, the garageman has a lien on the vehicle for the costs of the care, including towing). *But see Bosworth v. Gulf Coast Dodge, Inc.*, 879 S.W.2d 152, 157–58 (Tex. App.—Houston [14th Dist.] 1994, no writ) (holding that when the Texas Abandoned Motor Vehicle Act applies to a vehicle abandoned with a vehicle storage facility, the lien provided under section 70.003 is not applicable).

[8]*See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (West Supp. 2012).

notice under section 683.012 of the transportation code;[9] and Miller did not rely on any representations by Pro Tow.

Pro Tow further asserted that unjust enrichment is not an independent cause of action; that Miller and ABC's claim for restitution failed because Pro Tow did not engage in any conduct relating to Miller's purchase of the trailer and all of Pro Tow's actions were governed by state law; and that Miller alleged no facts showing that Pro Tow engaged in any conduct that would give rise to a claim for restitution. It also alleged that the City of Lewisville was required by statute to pay Pro Tow the costs and expenses associated with towing and storing the vehicle under chapter 683 of the transportation code,[10] and thus, as a matter of law, the money paid to Pro Tow could not belong to Miller. Finally, it asserted that ABC was not a party to the sale and had not engaged in any relationship with Pro Tow and therefore Pro Tow was entitled to summary judgment on all claims asserted by ABC.

Miller and ABC filed a response that attached Miller's affidavit in which he stated that he would not have bought the trailer had he known that the owner had not been notified of the sale on June 22, 2003, as stated on the auction receipt. They also included excerpts from the deposition of Michael Green, Pro Tow's

---

[9]Tex. Transp. Code Ann. § 683.012 (West Supp. 2012), *amended by* Act of May 22, 2013, 83rd Leg., R.S., ch. 1287, § 67, 2013 Tex. Sess. Law Serv. 3250, 3260–61 (West).

[10]*Id.* §§ 683.001–.078 (West 2011 & West Supp. 2012).

6

manager and part owner, who stated that Pro Tow had received an affidavit of possession from Lisa Kalista. Kalista described the trailer and personal property inside the trailer. Pro Tow allowed her to take the personal property but did not allow her to take the trailer because she had no proof of ownership. They included a copy of the affidavit, executed on an "Affidavit of Right of Possession or Control" form promulgated by the Texas Department of Transportation.[11] Miller and ABC also attached excerpts of Miller's deposition in which he stated that he would not have bought the trailer if he had known about Kalista's affidavit because he could not guarantee good title.

The trial court signed orders granting the summary judgment motions, ordering that Miller and ABC take nothing on their claims and dismissing the claims with prejudice. Miller and ABC filed a motion for new trial, which the trial court denied.

### Standard of Review

We review a summary judgment de novo.[12] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence

---

[11] *See* Tex. Dep't of Motor Vehicles, https://ftp.txdmv.gov/pub/txdot-info/mcd/pdf/form1895.pdf.

[12] *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

7

contrary to the nonmovant unless reasonable jurors could not.[13] We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[14] A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[15]

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[16] The motion must specifically state the elements for which there is no evidence.[17] The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[18]

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable

---

[13] *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[14] *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[15] *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); see Tex. R. Civ. P. 166a(b), (c).

[16] Tex. R. Civ. P. 166a(i).

[17] *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

[18] *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

inference and resolving any doubts against the motion.[19]   We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions.[20]  We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not.[21]   If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.[22]

## Analysis

We begin our analysis with Miller's second issue, in which he argues that the trial court erred by dismissing his claims because sufficient evidence supported them.

*H&W and West's Motion for Summary Judgment*

As a ground for summary judgment, H&W and West asserted that Miller and ABC's claim for equitable subrogation failed because they failed to appeal the judgment from the chapter 47 proceeding, and the failure to appeal acts as

[19]*Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).

[20]*Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

[21]*Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

[22]*Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 541 U.S. 1030 (2004).

9

judicial estoppel to the claim. Although H&W and West used the term "judicial estoppel," they cited to a case, *Texas Department of Public Safety v. Petta*,[23] which considers the doctrine of collateral estoppel. We assume, then, that H&W and West meant collateral estoppel.

Chapter 47 of the code of criminal procedure provides a proceeding by which a person claiming an interest in stolen property may assert that interest.[24] So, for example, a vehicle storage facility claiming to be owed storage fees for storing stolen vehicles may assert that claim in a chapter 47 proceeding involving those vehicles.[25] If Miller and ABC believed that they had a right to be compensated for what they paid for the trailer, they had the statutory right to assert that interest in the proceeding.[26] Their attorney essentially conceded in the trial court, however, that Miller did not file a counterclaim against H&W in that proceeding to recover the purchase price for the trailer.

Collateral estoppel, or "issue preclusion," prevents a party from relitigating essential issues of fact or law that were actually litigated and resolved in a prior

---

[23]44 S.W.3d 575, 579 (Tex. 2001).

[24]Tex. Code Crim. Proc. Ann. arts. 47.01–.12.

[25]*See City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 234 (Tex. 2011).

[26]*See* Tex. Code Crim. Proc. Ann. art. 47.01a; *VSC, LLC*, 347 S.W.3d at 234.

court proceeding.[27] Miller and ABC were cast as adversaries against H&W in the chapter 47 proceeding—ABC was named as a party and both Miller and H&W were named as parties "reasonably likely . . . to have an interest" in the trailer.[28] Thus, an issue squarely addressed in that proceeding was Miller's interest in the trailer.[29] H&W and West argued in their motion for summary judgment that any interest Miller and ABC had in the trailer was extinguished by the judgment of the chapter 47 proceeding, from which Miller and ABC did not appeal. Citing *Petta*, they argued that Miller and ABC are estopped from asserting their claims against H&W and West.

We need not address the merits of H&W and West's estoppel argument because Miller and ABC do not challenge this summary judgment ground on appeal as to H&W and West. Accordingly, we must affirm the summary

---

[27] *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 802 (Tex. 1992); *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex. 1985).

[28] *See* Tex. Code Crim. Proc. Ann. art. 47.01a(c) (stating that at a chapter 47 hearing, "any interested person may present evidence showing that . . . the person is entitled to possess the property"); *see also VSC, LLC*, 347 S.W.3d at 234, 237 (noting that chapter 47 protects a person's claimed interest in seized property, such as a lien or leasehold interest, and holding that vehicle storage facility could have used a chapter 47 proceeding to assert compensation for storage fees for stolen vehicles stored at the facility).

[29] *See Van Dyke*, 697 S.W.2d at 385 (stating that collateral estoppel applies when parties were adversaries in the prior case and the facts sought to be litigated in the second case were fully and fairly litigated in the prior case and were essential to its judgment).

11

judgment on that ground.[30]   Miller and ABC do assert in a reply brief that

estoppel does not apply to its claims against Pro Tow.[31]   But although Pro Tow

stated in the facts section of its motion that Miller "failed to appeal the decision

and essentially abandoned his legal claim on the vehicle and his legitimate

defenses," it does not assert collateral estoppel as a summary judgment ground.

We overrule Miller's second issue as to H&W and West.

*Pro Tow's Motion for Summary Judgment on ABC's claims*

We will now consider the grounds asserted by Pro Tow in its summary

judgment motion.  As to ABC, Pro Tow asserted that it was entitled to summary

judgment on any claims asserted by ABC because there was no evidence that

ABC was a proper party to the case.[32]   It asserted that ABC was not a party to

the sale, was not listed on the auction receipt as purchaser, paid no money at the

auction, gave no consideration, entered into no transactions on the day of the

auction, and had no legal relationship with Pro Tow.  In response, Miller and ABC

asserted that ABC had standing because All Economy transferred the vehicle to

---

[30]*See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970) (holding that summary judgment must stand since it may have been based on a ground not specifically challenged on appeal); *Shelton v. Sargent*, 144 S.W.3d 113, 129 (Tex. App.—Fort Worth 2004, pet. denied) (affirming summary judgment on unchallenged ground).

[31]*See Gray v. Woodville Health Care Ctr.*, 225 S.W.3d 613, 620 (Tex. App.—El Paso 2006, pet. denied) (holding that an issue raised for the first time in reply brief was not preserved for appeal).

[32]*See* Tex. R. Civ. P. 166a(i).

12

ABC in order for ABC to sell the vehicle, and ABC therefore had a right of possession. As evidence, they pointed to Miller's affidavit and his deposition.

In the portion of the deposition relied on by Miller, he testified that he was going to sell the trailer through ABC but that he did not attempt to transfer title to ABC and he never intended to transfer title to that entity. When asked if the funds to buy the trailer came from ABC or All Economy, he responded, "Probably All Economy. Maybe, maybe not." In the affidavit, Miller stated that after he purchased the trailer, he transferred it to his "other business location," ABC. Nothing in the affidavit indicates that he transferred title or any interest in the trailer to ABC. The only evidence was that Miller physically moved the trailer to ABC's lot. No evidence raised a fact issue as to whether ABC had any interest in the trailer on which it could base the claims it asserted against Pro Tow or how it was aggrieved by any acts of Pro Tow.[33] Accordingly, we hold that the trial court did not err by granting summary judgment and dismissing ABC's claims against Pro Tow. We overrule this part of Miller's second issue.

*Miller's Fraud Claims*

We now consider Pro Tow's grounds for summary judgment on Miller's claims, beginning with its grounds for summary judgment on Miller's fraud claim. Miller's claim is based on two allegations: (1) that Pro Tow represented that it had given actual notice to the trailer's owner on June 22, 2003, when in fact it

---

[33] *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) ("For standing, a plaintiff must be personally aggrieved.").

13

only gave notice by publication and (2) that Pro Tow did not inform him that Kalista had made a claim on the trailer. Thus, Miller's claim is based on both an alleged affirmative representation and a failure to disclosure.

To prevail on his fraud claim, Miller had to establish that (1) Pro Tow made a false, material representation, (2) that Pro Tow either knew to be false when made or was made without knowledge of its truth, (3) that Pro Tow intended for it to be acted upon, (4) that Miller justifiably relied upon the representation and (5) that Miller was injured.[34] Failure to disclose information can constitute a false representation, but only when the circumstances impose on a party a duty to speak and the party deliberately remains silent.[35] Whether such a duty exists is a question of law.[36]

Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship.[37] Several courts of appeals, including this one, have held that a duty to disclose may also arise when a party makes a partial disclosure that, although true, conveys a false impression.[38]

---

[34] *See Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 703 (Tex. App.—Fort Worth 2006, pet. denied).

[35] *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001).

[36] *Id.*

[37] *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

[38] *See Citizens Nat'l Bank v. Allen Rae Investments, Inc.*, 142 S.W.3d 459, 477 (Tex. App.—Fort Worth 2004, no pet.). The Texas Supreme Court has not

14

In its summary judgment motion, Pro Tow asserted that it had no conversations with Miller about the trailer, that it was not a party to the auction, that it had no duty to discuss a sale that it did not conduct or participate in, and that it had no legal relationship with Miller, including any contractual or confidential relationship. It asserted that it had no duty under the law to provide notification of abandonment to the vehicle's owner because the statute governing abandoned vehicles made that notification the responsibility of the City of Lewisville.

As evidence, Pro Tow included excerpts from Miller's deposition, and it directed the court to section 683.012 of the transportation code.[39] In Miller's deposition, he stated that he had no conversation with anyone from Pro Tow about the trailer. He stated that the only person he spoke to about the trailer was a person from another auto parts business who was also at the auction. He did not recall the auctioneer saying anything about the trailer. He stated that he had no contractual relationship with Pro Tow and had not entered into any kind of agreement with Pro Tow. And he acknowledged that the City of Lewisville conducted the auction and that the auctioneer worked for the City of Lewisville. Pro Tow also pointed to the auction sales receipt, which lists the Lewisville Police Department as the entity that sold the vehicle. Pro Tow also included the

yet adopted this rule. *See Bradford*, 48 S.W.3d at 755–56 (Tex. 2001) (mentioning the rule and the fact that the court had not yet adopted it).

[39]Tex. Transp. Code Ann. § 683.012.

affidavit testimony of Michael Green and George Green, owners of Pro Tow, who both stated that the City of Lewisville conducted the auction.

Attached to George's affidavit were copies of notices placed in the Denton Record Chronicle and in the Denton County Morning News. One of the notices lists vehicles that had been impounded by the Lewisville Police Department and stored at Pro Tow and one other storage facility. The notice states that vehicles not claimed within twenty days would be sold at public auction. The other notice states that by the notice, Pro Tow notifies the owners of the vehicles listed in the notice of their right to redemption. The notice is dated July 18, 2003. Both notices listed the trailer.

Section 683.012 states that a law enforcement agency must send a notice of abandonment to the last known registered owner of a vehicle for which it receives a report of abandonment.[40] When the identity of the owner cannot be determined, notice by publication is sufficient.[41]

Miller's response included his affidavit, executed prior to his deposition, in which he asserted that at the auction, the auctioneer stated that the trailer had good title. But he offered no evidence to contradict Pro Tow's assertion in its motion and Pro Tow's evidence that it was the City of Lewisville rather than Pro Tow that conducted the auction.

---

[40] *Id.*

[41] *Id.*

16

Miller also asserted in his response that it was Pro Tow who advertised the sale. The evidence he cited to support that assertion was the deposition of Michael Green from Pro Tow, acknowledging that it put the July 18, 2003 notice in the newspaper. Miller does not point to any evidence of who put the other notice in the paper, the one appearing to be from the City of Lewisville.[42] And regardless of who published the notices, the evidence shows that the notice was given by publication as required by statute and that the City of Lewisville conducted the auction.

To the extent that Miller claims that the auction receipt created a false impression by implying that the owner was given personal notification, the summary judgment evidence shows that Pro Tow did not issue the auction receipt and did not dictate its contents. Miller acknowledges that Pro Tow made no representation to him at all regarding the trailer. In his brief, Miller tries to get around this impediment to his claim by asserting that Pro Tow represented to the Lewisville Police Department that it had given the owner notice on June 22, 2003, and the city put that information in the receipt, thereby passing the representation on to him. But the only evidence he points to in support of that assertion is the auction sales receipt, which states that notice was given on June 22, 2003. He has no evidence of why the City put that date on the receipt or that

---

[42] *See id.* (setting out the requirements for notice by publication and providing that the *law enforcement agency* notified of an abandoned vehicle must provide notice to the owner).

17

it did so based on Pro Tow's representations to it. No evidence shows that Pro Tow made any representation to the City about the notice or the date of the notice. And the sales receipt was issued after Miller had purchased the trailer. He does not explain how he based his decision to buy the trailer on a representation made after he had already purchased it.

This evidence shows that it was the City of Lewisville, not Pro Tow, who conducted the auction and issued the auction receipt. The summary judgment evidence further shows that Miller had no conversations with Pro Tow about the trailer. This evidence is sufficient to show that Miller did not rely on any representation by Pro Tow in deciding to purchase the trailer.

As for Miller's claim based on nondisclosure, although he alleged that Pro Tow had a duty to affirmatively represent that someone had made a claim to the trailer, but he gave no basis for that duty, and he stated that he had no relationship with Pro Tow. The evidence showed that Pro Tow had no confidential or fiduciary relationship with Miller. And because the evidence showed that Pro Tow made no disclosure to Miller, the trial court did not err by concluding that Pro Tow did not make a partial disclosure giving rise to a duty to fully disclose. Thus, Pro Tow established as a matter of law that it had no duty to inform Miller that someone had made a claim on the trailer or that the only notification provided to the owner was by publication. Accordingly, the trial court did not err by granting summary judgment for Pro Tow on Miller's fraud claim. We overrule this part of Miller's second issue.

*Miller's DTPA Claims*

We next consider Miller's DTPA claim.  In his petition, Miller asserted that Pro Tow engaged in a false, misleading, or deceptive act in the conduct of its trade or commerce with Miller by (1) taking advantage of his lack of knowledge, ability, experience, or capacity to a grossly unfair degree[43] and (2) failing to disclose information concerning goods or services that was known at the time of the transaction with the intention of inducing Miller into a transaction into which Miller would not have entered had the information been disclosed.[44]  Miller further alleged that Pro Tow's action was unconscionable.[45]

In its summary judgment motion, Pro Tow asserted that there was no evidence that Pro Tow violated any specific provision of the DTPA.  Pro Tow asserted that it made no representation of any kind to Miller about the trailer.  It pointed to Miller's deposition in which he acknowledged that he had no conversations with anyone from Pro Tow about the trailer.  It again asserted that it had no duty to speak and that pointed out Miller acknowledged that he had no legal relationship with Pro Tow.  And it asserted that Miller failed to prove that it had withheld any information with the intent of inducing Miller into buying the trailer.

---

[43]Tex. Bus. & Com. Code Ann. § 17.45(5).

[44]*Id.* § 17.46(b)(24).

[45]*See id.* § 17.50(a)(3).

19

In his response, as evidence of Pro Tow's intent in withholding information about Kalista, Miller asserted that if a vehicle does not sell at auction, Pro Tow does not get paid. Miller directed the trial court to the portion of the affidavit of Michael Green where Green stated that if a vehicle does not sell for enough to cover Pro Tow's costs, it takes a loss on that vehicle. This evidence does not raise a fact issue on whether Pro Tow had the intent to induce Miller into buying the trailer and, for that reason, did not disclose to him that Kalista asserted ownership of the trailer.

Miller also asserted that Pro Tow falsely represented to the Lewisville Police Department and ultimately to him that the owner of the trailer was notified on June 22, 2003. He makes the same assertion on appeal.

Miller relied on the deposition of Michael Green to raise a fact issue on whether Pro Tow had represented that it had given actual notice to the owner. In the deposition, Green stated that Pro Tow did not fill out the auction receipt and that he did not know where the information in it came from. When asked where the police department would have found the information used in the form, Green stated that it was common practice for the police to come look in Pro Tow's files, but he did not know if that had happened in this case. This evidence does not raise a fact issue about whether Pro Tow affirmatively told the Lewisville Police Department that it had given actual notice to the trailer's owner. We hold that the trial court did not err by granting summary judgment on Miller's DTPA claim.

*Miller's Unjust Enrichment Claims*

We now consider Miller's claims based on unjust enrichment. Miller does not challenge Pro Tow's summary judgment argument that unjust enrichment is not a separate cause of action.[46] But he does challenge Pro Tow's grounds for summary judgment on his claims for restitution and for money had and received.

Unjust enrichment is a term of art for a doctrine "based on the equitable principle that one who receives benefits which would be unjust for him to retain ought to make restitution."[47] Assumpsit is a cause of action that was developed to provide a remedy for circumstances involving unjust enrichment or an implied promise to pay what in good conscience a defendant was bound to pay the plaintiff.[48] Over time, assumpsit was divided into various categories.[49] One such category is that of money had and received, "a category of general assumpsit to restore money where equity and good conscience require refund."[50] A claim for

---

[46] *See Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.) ("Unjust enrichment is not an independent cause of action but rather characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances which give rise to an implied or quasi-contractual obligation to repay.").

[47] *Id.*; *see also* Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. a (2001).

[48] *MGA Ins. Co. v. Charles R. Chesnutt, P.C.*, 358 S.W.3d 808, 813 (Tex. App.—Dallas 2012, no pet.).

[49] *Id.*

[50] *Id.*

21

money had and received is not based on the defendant's wrongdoing; "rather, it looks only to the justice of the case and inquires whether the defendant has received money that rightfully belongs to another."[51]

Restitution is another common law cause of action that arises when a person is unjustly enriched at the expense of another.[52] The word "restitution" also describes the remedy available under such a claim; this remedy encompasses both a plaintiff's right to a reversal of a transfer, and thus a literal restitution, and also a plaintiff's ability to recover something the plaintiff did not previously possess, such as the defendant's wrongful gain in excess of the plaintiff's loss.[53]

The fact that it "'might appear expedient or generally fair that some recompense be afforded for an unfortunate loss' to the claimant, or because the benefits to the person sought to be charged amount to a windfall" is not alone enough to give rise to a claim for restitution based on unjust enrichment.[54] As

---

[51]*H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 507 (Tex. App.—Fort Worth 2012, no pet.); *see also MGA Ins. Co.*, 358 S.W.3d at 814 ("To prove a claim for money had and received, a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him.").

[52]*Miga v. Jensen*, 299 S.W.3d 98, 105 (Tex. 2009); Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. a.

[53]Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. a, c.

[54]*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (quoting *Austin v. Duval*, 735 S.W.2d 647, 649 (Tex. App.—Austin 1987, writ denied)).

the Restatement notes, the concern of restitution is not with unjust enrichment in a broad, moral sense, "but with a narrower set of circumstances giving rise to what might more appropriately be called *unjustified enrichment*."[55] Such enrichment is unjustified in that it "lacks an adequate legal basis."[56]

In some cases, a right of restitution arises even when the defendant has not been enriched, such as when the plaintiff transfers an item to the defendant for market value but was induced to do so by misrepresentation.[57] Thus, in this case, the fact that Pro Tow received its storage and towing fees, which Miller does not contend were improperly calculated, would not in and of itself prevent Miller from recovering on a claim for restitution, provided that he could establish that he had been fraudulently induced into buying the trailer.

A claim for restitution for unjust enrichment, as distinguished from a claim for money had and received, arises only when one person has obtained a benefit

---

[55]Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b.

[56]The Restatement lists examples of such transactions and includes "when the claimant's consent to the transaction is impaired for some reason"; "when the claimant confers unrequested benefits without obtaining the recipient's agreement to pay for them"; "when an attempted contractual exchange miscarries after partial performance"; "when the defendant acquires benefits by wrongful interference with the claimant's rights"; and certain situations when "benefits are conferred on the recipient by a third party (rather than by the claimant)." *Id.*

[57]*Id.* § 1 cmt. c.

23

from another by fraud, duress, or undue advantage.[58] We have already held that Miller's claim for fraud failed as a matter of law. He did not allege that he bought the trailer under duress, and the evidence shows that he bought it voluntarily in order to resell it through his business. In its summary judgment motion, Pro Tow pointed to evidence that Miller routinely bought vehicles at auctions for his business and that no person from Pro Tow discussed the sale with Miller or had any interactions with Miller regarding the sale, and therefore it negated any claim that it exerted any undue influence over Miller. Miller produced no evidence to the contrary. Accordingly, we hold that the trial court did not err by granting summary judgment on Miller's claim for restitution.

Regarding Miller's claim for money had and received, as stated above, he would not be required to show any wrongdoing on Pro Tow's part to establish such a claim.[59] But he was required to establish that Pro Tow held money that rightfully belonged to him.[60] Pro Tow asserted in its summary judgment motion that the Lewisville Police Department paid its storage fees because Pro Tow had

---

[58]*Heldenfels Bros., Inc.*, 832 S.W.2d at 42; *see also Quigley v. Bennett*, 227 S.W.3d 51, 56 n.8 (Tex. 2007) (Brister, J., concurring and dissenting) (using the term "undue influence" instead of "undue advantage").

[59]*See H.E.B., L.L.C.*, 369 S.W.3d at 507.

[60]*See id.*

a statutory right to be paid under transportation code chapter 683.[61] It argued that because Pro Tow had a legal right to be paid, Miller could not show that he was entitled to the proceeds. That is, a payment made to Pro Tow that was lawful and mandatory could not, as a matter of law, belong to Miller.

In his brief, Miller argues that the evidence established that Pro Tow holds $6,938.15 from the sale of the stolen trailer and that this money belongs to him because he was defrauded into purchasing the trailer. But we have held that Miller's fraud claim failed as a matter of law. He offers no other argument for why the money rightfully belongs to him.

The evidence does not show that Pro Tow had any obligation to do anything more to find the trailer's owner, or that it could have done so. Pro Tow produced summary judgment evidence that it notified the police of the trailer's abandonment and that the police could not locate a vehicle identification number on the trailer despite looking several times. The evidence also shows that Pro Tow made no representations to Miller about the trailer. Miller argues that he bought the trailer because he thought it had good title based on the auctioneer's representations. But Pro Tow did not make those representations, and Miller did not produce summary judgment evidence raising a fact issue about whether the auctioneer made the statements based on Pro Tow's representations to him.

---

[61] *See* Tex. Transp. Code Ann. § 683.032 (addressing vehicles abandoned in a storage facility and providing that the garagekeeper in custody of such a vehicle is entitled to towing, preservation, and reasonable storage fees).

Miller participated in the chapter 47 proceeding but did not appeal the resulting judgment. We cannot say that the trial court erred by determining that the evidence was insufficient to raise a fact issue about whether the money paid to Pro Tow rightfully belonged to Miller. Accordingly, we hold that the trial court did not err by granting summary judgment on Miller's claim for money had and received based on unjust enrichment. We overrule the remainder of Miller's second issue.

Because we have held that Miller and ABC did not challenge one of H&W and West's grounds for summary judgment and that they did not produce sufficient summary judgment evidence to defeat Pro Tow's motion for summary judgment, we do not address their first issue challenging the application of the statute of limitations.[62]

## Conclusion

Having overruled Miller's second issue, which is dispositive, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, MCCOY, and MEIER, JJ.

DELIVERED: September 19, 2013

---

[62]*See* Tex. R. App. P. 47.4.

26