

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00123-CV

_____

THE STATE OF TEXAS, Appellant

V.

JOSE MANUEL GONZALEZ, Appellee

---

On Appeal from County Court at Law No. 3
Tarrant County, Texas
Trial Court No. 2016-000171-3

---

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

After the Fort Worth Police Department (FWPD) seized appellee Jose Manuel Gonzalez's property, Gonzalez sued the State of Texas and the City of Fort Worth for an unconstitutional taking under the Texas Constitution and for various other violations of the Texas Constitution. Gonzalez settled his claims against the City and later took a default judgment against the State for $112,000 in damages and $87,000 in trial and appellate attorney's fees.

The State has appealed. In five issues, it argues that the trial court abused its discretion by denying the State's new-trial motion and by refusing to set aside the default judgment because (1) the trial court lacked jurisdiction over Gonzalez's takings claim and over the State; (2) the State had no notice of the trial that resulted in the default judgment; (3) the evidence is insufficient to support the default judgment; (4) Gonzalez's takings claim fails as a legal matter because the State is not liable for the City's or FWPD's actions; and (5) no legal authority supports the attorney's-fees award, or alternatively, the evidence is insufficient to support the award.

For reasons explained below, we sustain the State's third, fourth, and fifth issues. We will thus reverse the default judgment and render judgment dismissing Gonzalez's takings claim and ordering that Gonzalez take nothing on his remaining claims.

## I. Background

In December 2014, FWPD—pursuant to a search warrant—seized suspected stolen building materials from Gonzalez's business, JM Gonzalez Roofing. FWPD impounded the property in the City's impound lot.

In May 2015, the State of Texas, by and through the Tarrant County District Attorney, filed an action under Article 47.01a of the Texas Code of Criminal Procedure in justice court[1] to determine who had the superior right to possession of the seized property.[2] *See* Tex. Code Crim. Proc. Ann. art. 47.01a. After a hearing at which Gonzalez did not appear, the justice court ordered the seized property to be forfeited and released to FWPD for use and disposition in accordance with Article

---

[1]The case was styled "The State of Texas v. All Items on Exhibit A."

[2]Chapter 47 of the Texas Code of Criminal Procedure—entitled "Disposition of Stolen Property"—protects a person's claimed interest in seized property. *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 234 (Tex. 2011). *See generally* Tex. Code Crim. Proc. Ann. arts. 47.01–.12. When, as here, no criminal action relating to the seized, allegedly stolen property is pending, Article 47.01a provides a procedure for determining whether someone claiming an interest in that property has a superior right to possession. *See* Tex. Code Crim. Proc Ann. art. 47.01a. Any person or entity with a property interest may assert that interest with the court, and a judge "may hold a hearing to determine the right to possession of the property." *Id.* art. 47.01a(a). During that hearing "any interested person may present evidence showing that the property was not acquired by theft or another offense or that the person is entitled to possess the property." *Id.* art. 47.01a(c). An individual proving the superior right to the property is entitled to its return, subject to the State's use of it in prosecuting related crimes. *See id.* arts. 47.01a(a)(1)–(a)(2), .04. If the property is never claimed and the government sells it, the property's true owner may recover the proceeds. *Id.* arts. 47.06, .07.

47.01a. *See id.* Gonzalez appealed the order to county court for a trial de novo.[3] *See id.* art. 47.12(b); *see also* Tex. R. Civ. P. 506.3.

In county court, Gonzalez answered and counterclaimed against the State for damages to the seized property, alleging that the State's storage of the property caused it to deteriorate "to the point [of being] worthless."[4] Although the counterclaim did not state a specific cause of action, it alleged that the State's use or nonuse of tangible property caused the damage. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). The Tarrant County DA answered with a general denial and a plea to the jurisdiction arguing that immunity barred Gonzalez's claim against Tarrant County and that Gonzalez had failed to affirmatively demonstrate a waiver of that immunity.

In May 2017, Gonzalez filed a third-party petition, naming the "State of Texas" and the City as third-party defendants and asserting negligence and negligence per se claims against them. Gonzalez amended his third-party petition three months later to include a takings claim under the Texas Constitution. *See* Tex. Const. art. I, § 17(a).

In response to Gonzalez's third-party petition, the Tarrant County DA specially appeared and answered on the State's behalf. In its special appearance, the Tarrant

---

[3]Appeals from justice-court hearings under Article 47.01a must be heard by a county court or statutory county court. *Id.* art. 47.12(b). Such an appeal is governed by the applicable procedural rules for justice-court civil appeals to a county court or statutory county court. *Id.*

[4]The pleading did not contain a certificate of service, but the file stamp showed that it was e-filed.

4

County DA argued that although Gonzalez had named the State of Texas as a third-party defendant and had served the State in accordance with Texas Rules of Civil Procedure 21 and 21a,[5] *see* Tex. R. Civ. P. 21, 21a, he had not properly served the State because he did not comply with the Texas Tort Claims Act, which requires citation in a suit against the State to be served on the Texas Secretary of State,[6] *see* Tex. Civ. Prac. & Rem. Code Ann. § 101.102(c).

In May 2018, Gonzalez again amended his third-party petition and his counterclaims to drop his negligence claims and to allege that the State's and the City's seizure and inadequate storage[7] of his property were unconstitutional takings under the Texas Constitution and violated the Texas Constitution's due-process, due-course-of-law, and equal-protection provisions, as well as the Texas Constitution's protections against unreasonable search and seizure. *See* Tex. Const. art. I, §§ 3, 3a, 9, 17(a), 19. Gonzalez also requested a declaration that the City and the State had violated his constitutional rights and sought damages for the fair-market value of the materials, which he estimated was about $150,000.

---

[5]The Tarrant County DA did not specify which state entity Gonzalez had served.

[6]Gonzalez had served citation only on the City.

[7]Gonzalez alleged that the State and the City "allowed the building materials to be destroyed by failing to adequately protect such from the elements."

After a mediation in March 2019, Gonzalez and the City settled: the City agreed to pay Gonzalez some $46,000 and to return "all or part of the property" to him in full and final settlement of his claims against the City. When Gonzalez retrieved his property from the City, he acknowledged that he had been allowed to inspect the property and to retrieve all the items that he wished to retrieve, and he agreed to take those items as is. Regarding those items that Gonzalez chose not to retrieve—whether because they had been damaged by exposure to the elements or because he did not want them—Gonzalez relinquished any claim to those items and understood that the City would dispose of them as it saw fit. In April 2019, the trial court granted Gonzalez's motion to dismiss his claims against the City.

In early 2020, the Tarrant County DA filed a notice of nonsuit asking the trial court to sign an order nonsuiting the Chapter 47 case and moved to be removed as the State's counsel of record on Gonzalez's counterclaims and third-party claims. In its removal motion, the DA explained that as a result of Gonzalez's dismissing his third-party claims against the City and the DA's nonsuiting the Chapter 47 criminal proceeding, only Gonzalez's civil claims against the State remained. The DA claimed that its authority is generally limited to criminal matters and that it could not represent the State in civil matters unless authorized by statute. *See* Tex. Gov't Code Ann. § 44.320(a). The DA asserted that because Chapter 47 does not authorize the DA to represent the State in civil cases, the DA could not represent the State in defending against Gonzalez's civil claims and thus asked to be removed as counsel of record on

6

those claims. According to the DA, only the attorney general may act on the State's behalf in civil matters.

At the hearing on the Tarrant County DA's notice of nonsuit and removal motion, the DA explained that the State had never claimed an interest in the property and represented that the settlement between Gonzalez and the City had determined the superior-right-to-possession issue, which resolved the Chapter 47 case. The City agreed that the superior-right-to-possession issue had been resolved.

In May 2020, the trial court signed an order reflecting the parties' representations regarding the superior-right-to-possession issue and dismissing the Chapter 47 proceeding without prejudice. The trial court also granted the removal motion. The trial court removed the DA as counsel for Gonzalez's civil claims against the State, stayed the case for 30 days, and ordered that a copy of the order be sent "to the Texas Attorney General Ken Paxton so that he may have an opportunity to appear on behalf of the State of Texas in this lawsuit." The Tarrant County DA emailed a copy of the trial court's order to an assistant AG,[8] but the AG's office did not enter an appearance.

In early July 2020, Gonzalez wrote to the trial court to request that the case be set for trial the week of November 2, 2020, copying "Mr. Ken Paxton, Office of the Attorney General, PO Box 12548, Austin, TX 78711-2548" via certified mail, return

---

[8]No citation was served on the AG.

receipt requested. A returned green card indicated that the letter was received in the AG's "mail center." The AG still did not appear.

On September 21, 2020, the trial court set the case for a jury trial on November 2, 2020, but nothing in the record indicates that the trial-setting order was sent to the AG's office. On November 2, Gonzalez moved to waive a jury and to try the case to the bench on November 24, 2020. The motion lacked a certificate of service to indicate that the AG's office was served with the motion. The trial court signed an order granting the motion and resetting the case for a November 24 bench trial. The trial court also signed a separate trial-setting order reflecting the new trial date. The record does not show whether either order was sent to the AG's office in Austin. Instead, the trial-court clerk mailed the trial-setting order to the "The State of Texas, 401 Belknap, Fort Worth, TX 76196."[9] According to the trial court's docket sheet, the trial-setting order was returned to the clerk.

On November 24, 2020, the trial court called the case to trial and stated on the record that "this matter was forwarded to the Attorney General's office, and the Texas Attorney General has refused to make an appearance in the case." During his testimony, Gonzalez insisted that the building materials that the State had seized were not stolen, that he was not engaged in a criminal enterprise at the time of the seizure, and that he was never arrested for any crime. Gonzalez explained that as part of his

---

[9]This is the Tarrant County DA's street address, but the suite number is missing.

settlement with the City, the City had paid him $47,000 and had allowed him to retrieve the materials. But only about 25 percent of the materials were still usable because "[t]he rest of [them] had been ruined over the years of exposure to the weather." Gonzalez testified that the materials' market value was $196,000, that he had received $47,000 from the City, and that the value of the materials that he retrieved was $37,000. Taking those amounts into account, Gonzalez claimed that he was "out" about $112,000 "more or less." Gonzalez's attorneys then testified to trial and appellate attorney's fees.

On January 21, 2021, the trial court signed a final judgment in Gonzalez's favor against the State for $112,000 in damages, $30,000 in trial attorney's fees, and $57,000 in conditional appellate attorney's fees.[10] The judgment did not award any declaratory relief.

Four days later, the AG appeared on the State's behalf and later timely moved for a new trial and to set aside the judgment as void for lack of subject-matter jurisdiction.[11] *See* Tex. R. Civ. P. 329b(a). After a nonevidentiary hearing, the trial court orally denied the motion, and the State has appealed.

---

[10]The judgment stated that the "Defendant State of Texas [had] previously appeared by and through the Tarrant County District Attorney's Office[,] who withdrew[,] after which the Court provided notice to the Texas Attorney General to represent the State of Texas herein[,] but [it has] not undertaken to represent the State of Texas."

[11]The State's new-trial motion was not verified and was unaccompanied by affidavits or any other evidence.

## II. The State's Issues

In five issues, the State argues that the trial court abused its discretion by denying its new-trial motion and by refusing to set aside the default judgment because (1) the trial court lacked jurisdiction over Gonzalez's takings claim and over the State; (2) the State did not have proper notice of trial; (3) the evidence is legally and factually insufficient to support the default judgment; (4) Gonzalez's takings claim fails as a legal matter because the State is not liable for the City's or FWPD's actions; and (5) no authority supports the attorney's-fees award, or alternatively, the evidence is legally and factually insufficient to support the award. Because the State's first, third, and fourth issues attack the trial court's subject-matter jurisdiction over Gonzalez's takings claim,[12] we address those issues first. *See* Tex. R. App. P. 47.1. We will then address the State's remaining issues to determine whether the trial court otherwise abused its discretion by denying the State's new-trial motion and by failing to set aside the default judgment.

## III. Standard of Review

We review a trial court's order denying a motion for new trial or to set aside a default judgment for an abuse of discretion. *See In re Marriage of Sandoval*, 619 S.W.3d 716, 721 (Tex. 2021); *Lease Fin. Grp., LLC v. Childers*, 310 S.W.3d 120, 124 (Tex. App.—Fort Worth 2010, no pet.). A trial court abuses its discretion if it acts without

---

[12]The State does not challenge the trial court's subject-matter jurisdiction over Gonzalez's other claims.

reference to any guiding rules or principles—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). For example, a trial court abuses its discretion if it fails to analyze the law correctly or misapplies the law to established facts, *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding); *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011), or if its decision is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law, *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding).

## IV. Subject-Matter Jurisdiction
## Over Gonzalez's Takings Claim

A "takings" claim is rooted in the takings clause of the Texas Constitution—Article I, Section 17—which provides, in pertinent part, that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." Tex. Const. art. I, § 17(a); *see City of Dallas v. Jennings*, 142 S.W.3d 310, 313 n.2 (Tex. 2004) (noting that "taking," "damaging," and "destruction" of one's property are three distinct claims arising under Article I, Section 17, but the term "taking" has become used as shorthand to refer to all three types of claims). The State argues in parts of its first and third issues and in its fourth issue that the trial court erred by not setting aside the default judgment because the trial court lacked subject-matter jurisdiction over

11

Gonzalez's takings claim.[13] Within its first issue, the State argues that Gonzalez's takings claim was not ripe while the underlying Chapter 47 case was pending but then became moot once that case was resolved.[14] The State argues in its third and fourth issues that sovereign immunity bars Gonzalez's takings claim because Gonzalez failed to allege and prove sufficient facts to support a viable takings claim against the State. Because the State's third and fourth issues are dispositive of Gonzalez's takings claim, we do not address the ripeness and mootness arguments raised in the State's first issue. *See* Tex. R. App. P. 47.1.

---

[13]In the remainder of the State's first issue, it contends that Gonzalez did not properly serve citation on the State. This is a challenge to the trial court's personal jurisdiction over a party, not the trial court's subject-matter jurisdiction over a claim. *See In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012) ("Personal jurisdiction, a vital component of a valid judgment, is dependent 'upon citation issued and served in a manner provided for by law.' If service is invalid, it is 'of no effect' and cannot establish the trial court's jurisdiction over a party." (citations omitted)); *Tex. Dep't of Transp. v. Self*, No. 02-21-00240-CV, 2022 WL 1259094, at *6 (Tex. App.—Fort Worth Apr. 28, 2022, no pet. h.) (mem. op. on reh'g) (explaining that we address subject-matter jurisdiction on a claim-by-claim basis).

Within its third issue, the State argues that no evidence supports Gonzalez's takings claim, which is effectively a challenge to the trial court's subject-matter jurisdiction over that claim. *See, e.g.*, *City of San Antonio v. Pollock*, 284 S.W.3d 809, 820–21 (Tex. 2009) (concluding that because "there was no evidence of a compensable taking," city was immune from plaintiffs' takings claim).

[14]The State also asserts that Gonzalez lacked standing because his claims were not ripe. Although standing also implicates subject-matter jurisdiction, standing focuses on *who* may bring an action, while ripeness examines *when* an action may be brought. *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). We note that after examining the State's arguments, the State's standing argument is actually one of ripeness. *See id.*

Unless the State consents to suit, sovereign immunity shields the State from lawsuits for damages and deprives a trial court of subject-matter jurisdiction over suits against the State.[15] *See Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004) (op. on reh'g). But sovereign immunity does not protect the State from a claim under the Texas Constitution's takings clause. *State v. Brownlow*, 319 S.W.3d 649, 652 (Tex. 2010). Even so, the State retains its immunity when a plaintiff does not plead and prove sufficient facts to establish a viable takings claim. *See Hearts Bluff*, 381 S.W.3d at 491 (holding that trial court did not have jurisdiction over dispute because property owner did not plead and prove sufficient facts to establish a viable takings claim); *City of Justin v. Wesolak*, No. 02-15-00379-CV, 2016 WL 2989568, at *4 (Tex. App.—Fort Worth May 19, 2016, no pet.) (mem. op.) ("When a plaintiff fails to allege a valid takings claim, governmental immunity continues to apply, and a trial court is without subject-matter jurisdiction."). A valid takings claim requires (1) that a governmental entity intentionally performed certain acts in the exercise of its lawful authority; (2) that such acts resulted in taking, damaging, or destroying the plaintiff's property; and (3) that the taking was for public use. *See, e.g., Wesolak*, 2016 WL 2989568, at *4 (citing *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001)).

---

[15]The existence of subject-matter jurisdiction is a legal question that we review de novo. *Harris Cnty. v. Annab*, 547 S.W.3d 609, 612 (Tex. 2018).

Here, the State contends that Gonzalez's takings claim has no legal basis because it is not liable for the City's or FWPD's actions. It argues that because Gonzalez has not alleged or shown any intentional acts by the State or any of its employees relating to the damage to his property and has not cited any statute by which the State has waived immunity from suit for the City's or FWPD's actions, Gonzalez has failed to plead and prove sufficient facts to establish a valid takings claim for which the State's sovereign immunity is waived. The State further argues that there is no evidence that Gonzalez's property was taken or damaged for public use.

A takings claimant must plead and prove that the government's intentional acts were the proximate cause of the taking or damaging of the property.[16] *See Hearts Bluff*, 381 S.W.3d at 483–84. Regarding intent in the takings context, the Texas Supreme Court has explained that

> the government's "mere negligence which eventually contributes to the destruction of property is not a taking"; rather, the government must act intentionally. This requirement is rooted in the constitutional provision that a compensable taking occurs "only if property is damaged or appropriated for or applied to public use." An accidental destruction of property does not benefit the public. The public-use limitation "is the factor which distinguishes a negligence action from one under the constitution for destruction."
>
> For purposes of article I, section 17, a governmental entity acts intentionally if it knows either "that a specific act [was] causing

---

[16]"The governmental entity sued must have taken direct governmental action, or have been the proximate cause, of the harm." *Hearts Bluff*, 381 S.W.3d at 484.

14

identifiable harm" or "that the specific property damage [was] substantially certain to result from" the act. A governmental entity is substantially certain that its actions will damage property only when the damage is "necessarily an incident to, or necessarily a consequential result of the [entity's] action." The government's knowledge must be determined as of the time it acted, not with benefit of hindsight.

*Pollock*, 284 S.W.3d at 820–21 (footnotes omitted).

Here, Gonzalez pleaded that the City and the State "without probable cause or a proper warrant[,] seized approximately $150,000 of building materials from Gonzalez" and that the City and the State "allowed the building materials to be destroyed by failing to adequately protect such from the elements." Gonzalez further pleaded that the City's and the State's "actions and failures" were "taking[s] in violation of the Texas Constitution." Even construing these pleadings liberally and in Gonzalez's favor,[17] these facts are insufficient to plead the intent required for a takings claim against the State.

At trial, Gonzalez testified that "the State of Texas" took his property and that his property was damaged while in the City's possession. After adding the compensation that he had received from the City to the value of the usable property he retrieved, he was still "out" about $112,000. There was no evidence, however, that the State's actual seizure of the property damaged or destroyed it or that the State

---

[17]When examining whether a plaintiff has alleged facts affirmatively demonstrating the trial court's subject-matter jurisdiction over a claim, we must determine if the pleadings—construed liberally in the plaintiff's favor and looking to the pleader's intent—allege sufficient facts affirmatively demonstrating subject-matter jurisdiction. *See Miranda*, 133 S.W.3d at 226.

knew that destruction or damage to the property while in the City's storage facility was substantially certain to result from that seizure. Likewise, there was no evidence that the alleged damage or destruction of Gonzalez's property was for a public use. *See Jennings*, 142 S.W.3d at 313 ("When damage is merely the accidental result of the government's act, there is no public benefit[,] and the property cannot be said to be 'taken or damaged *for public use.*'" (quoting *Tex. Highway Dep't v. Weber*, 219 S.W.2d 70, 71 (Tex. 1949))). The evidence was thus insufficient to support Gonzalez's takings claim against the State.[18]

Gonzalez failed to plead and prove sufficient facts to establish a viable takings claim. *See Hearts Bluff*, 381 S.W.3d at 491. The trial court thus lacked subject-matter jurisdiction over Gonzalez's takings claim, and we sustain the State's fourth issue and part of its third issue.

## V. Render Versus Remand

Normally, subject-matter jurisdiction is challenged through a plea to the jurisdiction and is determined during the early stages of a case and certainly before

---

[18]If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Id.* at 227–28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. This standard generally mirrors that of a traditional summary judgment. *Id.*; *see* Tex. R. Civ. P. 166a(c).

16

final judgment. Here, although the State challenged the trial court's subject-matter jurisdiction over Gonzalez's takings claim in the trial court, the State did not do so until its new-trial motion. The State's immunity arguments were thus not fully developed until appeal. Because the State essentially made its immunity arguments for the first time on appeal, we must remand Gonzalez's takings claim for further proceedings on the jurisdictional issue—rather than rendering judgment dismissing the claim—unless the State shows that one of three situations exists: (1) Gonzalez's pleadings or the record conclusively negate jurisdiction; (2) Gonzalez had a full and fair opportunity in the trial court to develop the record and amend his pleadings to show jurisdiction yet failed to do so; or (3) if Gonzalez did not have such an opportunity, he cannot show jurisdiction even if the case is remanded to the trial court and he is given the opportunity to develop the record as to jurisdiction and amend his pleadings. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 100 (Tex. 2012).

Here, Gonzalez's pleadings and the record conclusively negate jurisdiction over his takings claim against the State: Gonzalez has not shown and cannot show that the State's taking of his property was for public use. Property has not been taken for public use when the damage to the property is "merely the accidental result of the government's act." *Jennings*, 142 S.W.3d at 313; *see Pollock*, 284 S.W.3d at 820 ("An accidental destruction of property does not benefit the public."). "[T]he absence of the intent required for the first element of inverse condemnation necessarily implies

17

that the public-use element is also absent." *City of Dallas v. Zetterlund*, 261 S.W.3d 824, 833 (Tex. App.—Dallas 2008, no pet.) (citing *Jennings*, 142 S.W.3d at 313–14).

Gonzalez has maintained that the City's improper storage of the seized property—not the seizure itself—caused the property to be damaged or destroyed. He notes in his appellate brief that he is not seeking to hold the State vicariously liable for the City's actions but rather for the State's alleged wrongful seizure of the property. At most, the damage and destruction to Gonzalez's property after the State's seizure was an accident, which does not benefit the public.

Because the pleadings and record here conclusively negate jurisdiction over Gonzalez's takings claim against the State, we conclude that the proper appellate disposition of that claim is rendering judgment dismissing it. *See Rusk State Hosp.*, 392 S.W.3d at 100.

## VI. The State's New-Trial Motion

The remainder of the State's issues attack the trial court's default judgment against it. The State argues that the trial court abused its discretion by denying the State's new-trial motion and refusing to set aside the default judgment because the default judgment was either void for lack of service, invalid for lack of notice, or was unsupported by sufficient evidence or legal authority. Within its first issue, the State argues that because it was never properly served with citation, the default judgment is void and thus must be set aside. *See* Tex. R. Civ. P. 124. In its second, third, and fifth issues, the State alternatively argues that the default judgment is invalid because it was

18

not given notice of the final trial setting (issue two) or that the default judgment should be set aside because the evidence was insufficient to support it (issue three) and because there was no legal basis or sufficient evidence to support the attorney's-fees award (issue five).[19]

We need not address whether the State was properly served or received proper notice of the trial because the question of whether any of Gonzalez's other legal theories support the default judgment is dispositive of the rest of this appeal. *See* Tex. R. App. P. 47.1; *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 929–30 (Tex. 2009); *Wilson v. Dunn*, 800 S.W.2d 833, 837–38 (Tex. 1990); *cf. State v. Cook United, Inc.*, 469 S.W.2d 709, 712 (Tex. 1971) (deleting State of Texas from list of enjoined parties when temporary injunction issued in counterclaim filed in response to civil-injunction suit brought by district attorney on behalf of the State under the penal code was not served on attorney general). We thus turn to the rest of the State's third issue and to its fifth issue.[20]

---

[19]The State does not argue the applicability of Chapter 39 of the Texas Civil Practice and Remedies Code, so we do not address it. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 39.001–.002 ("Default Judgments in Certain Cases Defended by Attorney General").

[20]Within its third issue, the State generally asserts that the evidence is legally and factually insufficient to support the default judgment, but its argument is focused on the evidence supporting Gonzalez's takings claim. In its fifth issue, the State attacks the attorney's-fees award, in part because—as Gonzalez conceded during oral argument—there is no legal basis for it because attorney's fees are unavailable in a takings case, *see City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 249 (Tex. App.—San Antonio 2006, pet. denied), and the trial court's judgment did

In a trial to the court in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). When a reporter's record is filed, these implied findings are not conclusive, and an appellant may challenge them by raising issues challenging the legal and factual sufficiency of the evidence to support the judgment. *Id.* We apply the same standard when reviewing the sufficiency of the evidence to support implied findings that we use to review the evidentiary sufficiency of jury findings or a trial court's express findings of fact. *Id.* We must affirm the judgment if we can uphold it on any legal theory supported by the record. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011).

We have already determined that Gonzalez failed to plead and prove sufficient facts to establish a viable takings claim, so we cannot affirm the default judgment on that legal theory. Turning to Gonzalez's remaining claims—violations of the Texas Constitution's due-process, due-course-of-law, and equal-protection provisions, as well as the Texas Constitution's protections against unreasonable search and seizure—

---

not award Gonzalez declaratory relief for which an attorney's-fees award might have been available, *see City of Arlington v. Randall*, 301 S.W.3d 896, 908 n.7 (Tex. App.—Fort Worth 2009, pet. denied). We conclude that fairly included in these two issues is a challenge to the trial court's judgment on Gonzalez's other legal theories (violations of the Texas Constitution's due-process, due-course-of-law, and equal-protection provisions, as well as the Texas Constitution's protections against unreasonable search and seizure). *See* Tex. R. App. P. 38.1(f); *Dinkins v. Calhoun*, No. 02-17-00081-CV, 2018 WL 2248572, at *7 n.8 (Tex. App.—Fort Worth May 17, 2018, no pet.) (mem. op.).

we conclude that the judgment cannot be upheld on these legal theories either because, as the State points out, there is no private cause of action against the State for money damages arising under those provisions of the Texas Constitution. *See, e.g.,* *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 150 (Tex. 1995); *Donohue v. Dominguez*, 486 S.W.3d 50, 56 (Tex. App.—San Antonio 2016, pet. denied); *Turner v. Tex. Dep't of Mental Health & Mental Retardation*, 920 S.W.2d 415, 419 (Tex. App.—Austin 1996, writ denied); *Vincent v. W. Tex. State Univ.*, 895 S.W.2d 469, 475 (Tex. App.—Amarillo 1995, no writ). And Gonzalez did not file a notice of appeal challenging the trial court's failure to award him declaratory relief based on these alleged constitutional violations. *See* Tex. R. App. P. 25.1(c).

We thus sustain the remainder of the State's third issue and its fifth issue.

## VII. Conclusion

Having sustained the State's third, fourth, and fifth issues, we reverse the trial court's default judgment, and we render judgment dismissing Gonzalez's takings claim and ordering that Gonzalez take nothing on his remaining claims.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  August 25, 2022

21